# Illinois Official Reports

## Supreme Court

---

**Andrews v. Metropolitan Water Reclamation District of Greater Chicago,**
**2019 IL 124283**

---

Caption in Supreme
Court:

BECKY ANDREWS *et al.*, Appellees, v. THE METROPOLITAN
WATER RECLAMATION DISTRICT OF GREATER CHICAGO,
Appellant.

Docket No.        124283

Filed             December 19, 2019

Decision Under
Review

Appeal from the Appellate Court for the First District; heard in that
court on appeal from the Circuit Court of Cook County, the Hon.
William E. Gomolinski, Judge, presiding.

Judgment

Appellate court judgment affirmed.
Circuit court judgment reversed.
Cause remanded.

Counsel on
Appeal

Michael Resis, of SmithAmundsen LLC, of Chicago, for appellant.

Thomas A. Demetrio, Edward G. Willer, and Francis Patrick Murphy,
of Corboy & Demetrio, P.C., of Chicago, for appellees.

Robert E. Elworth, of HeplerBroom, LLC, of Chicago, for *amicus
curiae* Illinois Association of Defense Trial Counsel.

Kirsten M. Dunne, of GWC Injury Lawyers LLC, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Justices        CHIEF JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Theis, and Neville concurred in the judgment and opinion.

Justice Karmeier dissented, with opinion, joined by Justice Garman.


**OPINION**

¶ 1     At issue in this appeal is whether a water reclamation district is immune from liability pursuant to sections 2-109 and 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-109, 2-201 (West 2012)) for injuries suffered by the employee of a contractor. The circuit court of Cook County held defendant was entitled to immunity and entered summary judgment for defendant. The appellate court reversed the circuit court's judgment. 2018 IL App (1st) 170336. We now affirm the judgment of the appellate court, reverse the judgment of the circuit court, and remand for further proceedings.

¶ 2                          BACKGROUND

¶ 3     The Metropolitan Water Reclamation District of Greater Chicago (District) owns and operates the Calumet water reclamation plant located at 400 East 130th Street in Chicago. On July 10, 2008, the District entered into a contract with a joint venture, F.H. Paschen, S.N. Nielsen/IHC Construction (Joint Venture), for the "Primary Settling Tanks and Grit Removal Facilities" project to be carried out at the Calumet plant. The Joint Venture was the general contractor for the project.

¶ 4     According to the contract, it was the Joint Venture's responsibility to determine the procedures and methods for the work and furnish all temporary structures and safety equipment. The Joint Venture was also responsible for the safety of all personnel on the work site, including its own employees and District personnel. The contract required the Joint Venture to submit plans for the work to the District's engineer. The engineer then had the right to disapprove and reject any procedures and methods he deemed to be unsafe. The contract provided, however, that the engineer's acceptance of the plans did not relieve the Joint Venture of its responsibility for safety, maintenance, and repairs on the project.

¶ 5     Jeffrey Andrews was an employee of F.H. Paschen, S.N. Nielsen & Associates, LLC, a member of the Joint Venture. On April 21, 2011, Andrews was assigned to work at the plant's primary settling tank number 2402. According to the complaint in this case, prior to that date it had rained heavily, causing the area around the tank to be extremely muddy and the tank to

collect three feet of standing water. Andrews and a coworker, Luis Cuadrado, were assigned the job of applying grout to a gate at the bottom of a 29-foot effluent chamber.

¶ 6 In order to reach the bottom of the chamber, the workers used two ladders. First, they ascended a short, job-made wooden ladder to reach the top of the chamber. Then, they pivoted their bodies around the wooden ladder and onto a fiberglass extension ladder, which was set inside the chamber. The workers would then descend into the chamber using the fiberglass ladder. The two ladders were higher than the top of the chamber and were angled toward each other. There was no platform for workers to transition between the ladders. It was alleged that this two-ladder configuration had been used several times to reach the bottom of other tanks in the course of the construction project. While transitioning from the job-made ladder to the fiberglass ladder, Andrews fell approximately 30 feet and landed on Cuadrado, who had already descended to the bottom of the chamber. Both men were severely injured. Andrews suffered broken bones and severe, career-ending head injuries.

¶ 7 On January 3, 2012, Andrews's wife, Becky Andrews, filed suit against the District, both individually and as plenary guardian of the person and estate of her husband. Plaintiff filed an amended complaint on January 3, 2013. The amended complaint contained four counts alleging construction negligence, loss of consortium for construction negligence, willful and wanton construction negligence, and loss of consortium for willful and wanton construction negligence. Defendant filed a combined motion to dismiss citing both sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2012)). Defendant asserted it was immune from liability for the failure to supervise an activity on public property, pursuant to section 3-108 of the Tort Immunity Act. 745 ILCS 10/3-108 (West 2012).[1] This defense applied only to the negligence counts, since section 3-108 expressly excepts willful and wanton conduct from immunity. See *id.* Defendant also argued that the amended complaint failed to state a cause of action for willful and wanton conduct.

¶ 8 On May 3, 2013, the trial court dismissed the two negligence counts with prejudice on the grounds that defendant was entitled to immunity under section 3-108. The court dismissed the willful and wanton counts without prejudice, allowing plaintiff to replead those counts. On October 10, 2013, plaintiff filed her second amended complaint, adding the Joint Venture as a defendant.[2] The second amended complaint alleged two counts of willful and wanton construction negligence against the District, one count on behalf of Jeffrey Andrews and one count for Becky Andrews's loss of consortium. Both counts alleged that defendant

"30. *** failed in one or more of the following respects with an utter indifference and a conscious disregard for plaintiff's safety:

a. allowed workers to work upon effluent chambers without the use of access platforms, when it had actual knowledge that employees were previously not using them;

b. failed to supervise their employees on site when it knew of previous occasions when crews were working without fall protection;

---

[1]As a "sanitary district," the District is a local governmental body covered by the Act. See 70 ILCS 2605/1 *et seq.* (West 2012); 745 ILCS 10/1-206 (West 2012).

[2]The counts against the Joint Venture were later dismissed with prejudice based on the exclusive remedy provision of the Workers' Compensation Act. 820 ILCS 305/5(a) (West 2012).

- 3 -

c. willfully failed to implement its fall protection plan by not providing supervision by a competent person;

d. willfully failed to provide an offset platform or landing between the portable ladder and the 43' fiberglass extension ladder, when it had actual knowledge that offset platforms were previously not being used;

e. failed to implement a mandatory fall protection plan when it had actual knowledge of prior occasion [*sic*] when employees were not utilizing fall protection;

f. failed to implement a safety plan when it had actual knowledge that employees were transitioning from makeshift ladders to extension ladders without access platforms;

g. willfully failed to provide an adequate or suitable scaffold or ladder for Jeffrey Andrews to carry out his work when it knew Jeffrey Andrews was transitioning without an access platform;

h. required the F.H. Paschen, S.N. Nielsen & Associates, LLC crew members to work around the subject settling tank when it knew it was extremely muddy and knew that the inside of the chamber contained excessive water;

i. knowingly allowed Jeffrey Andrews to work in a confined work site in sloppy, rainy, muddy, and wet weather conditions;

j. willfully failed to provide a wide enough opening so that the slope of the ladder could be adequately extended, allowing Jeffrey Andrews to work safely when it knew the opening was too small to allow for a proper slope of the ladder;

k. willfully failed to provide fall restraints to Jeffrey Andrews when it knew Jeffrey Andrews did not have fall restraints during the transitioning stage;

l. [the District's] on-site engineer willfully failed to provide the necessary requirements for water site control, as per the contract;

m. willfully failed to provide safe, suitable site-control to Jeffrey Andrews, as per the contract; and

n. knowingly failed to properly monitor the work activities of the F.H. Paschen, S.N. Nielsen & Associates, LLC crew members."

¶ 9     On March 4, 2014, defendant filed a motion to dismiss the second amended complaint pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2012). Defendant argued that the complaint failed to state a cause of action for willful and wanton conduct because it did not allege that defendant had knowledge of any prior accidents or injuries. On April 23, 2014, the trial court granted in part and denied in part the motion to dismiss. The court found that plaintiff had failed to plead adequate causes of action for the willful and wanton failure to supervise. Accordingly, the court struck with prejudice the allegations of willful and wanton supervision set forth in paragraphs 30(b) and 30(c) of the two willful and wanton counts corresponding to Jeffrey and Becky Andrews in the complaint.

¶ 10    On October 22, 2014, defendant filed a motion to dismiss the second amended complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure. *Id.* § 2-619(a)(9). Defendant argued that it owed no duty to plaintiff based on the general rule that one who employs an independent contractor is not liable for the acts or omissions of the independent contractor. Moreover, defendant argued that it did not retain sufficient control over the contractor's work

to establish liability pursuant to the "retained control" exception set forth in section 414 of the Restatement (Second) of Torts. See Restatement (Second) of Torts § 414 (1965). The trial court denied the motion, finding an issue of fact precluded dismissal of the case.

¶ 11 Subsequently, on April 11, 2016, defendant filed a motion for summary judgment arguing that defendant was immune from liability under sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2012)). These sections immunize a local governmental entity from liability for injuries arising out of its employee's acts or omissions while determining policy and exercising discretion. *Id.* However, defendant did not support its immunity defense with evidence that its employees made discretionary or policy decisions with respect to the two-ladder configuration that resulted in Andrews's injuries. In fact, defendant referenced the deposition testimony of seven witnesses, all of whom testified that no District employees weighed in on worksite safety decisions.

¶ 12 For example, Greg Florek, a senior civil engineer for the District and the resident engineer assigned to the project, testified that the District had nothing to do with how the contractor performed its work or with safety aspects of the work. Florek admitted that he had no education or training in construction safety. He testified that he walked the job site once or twice a day in order to check the progress and confirm that the work was being done in compliance with the contract. Florek testified that he did not know when the two ladders were placed in the effluent chamber at the site of the accident, nor did he recall ever seeing that type of ladder configuration prior to the accident. He also stated that he never inspected the ladders involved in the occurrence or assessed whether they complied with any codes, rules, or regulations.

¶ 13 Defendant also cited the deposition testimony of John Lemon, defendant's principal civil engineer, and Douglas Pelletier, an employee of the general contractor and the senior manager on the project. Lemon testified that defendant did not supervise the means and methods of the work performed by contractors and did not have a designated person responsible for project safety. He testified that the general contractor was solely responsible for safety. Pelletier testified that the contractor was responsible for stopping any unsafe work at the job site. He also testified that defendant did not enforce safety or tell the workers how to do their work.

¶ 14 Despite the lack of evidence showing that any safety decisions were made by its employees, defendant argued it was immune from liability based solely on its contract with the Joint Venture. The contract language specified that defendant's engineer "may disapprove and reject" any "procedures, methods, structures or equipment *** which seem[ed] to him to be unsafe for the work hereunder." Defendant argued that this language reserved its right to make decisions concerning safety. It argued that the reservation of the right to exercise discretion, standing alone, is sufficient to invoke discretionary immunity under the Tort Immunity Act, even if that right is never exercised. In addition, defendant argued, its "decision[s] on what contractor to hire, the contractor's scope of work, the terms and conditions by which the work was to be performed, and decisions regarding delegation as to means and method and safety are all discretionary acts."

¶ 15 The trial court agreed and entered summary judgment in defendant's favor. The court ruled that "the [District] engineer had discretionary authority to make policy determinations under the terms of the contract between [the District] and subcontractor Paschen to enforce project safety." Based on the contract language, the court concluded that defendant was entitled to

absolute immunity under sections 2-109 and 2-201. Plaintiff's motion to reconsider was denied by the trial court.

¶ 16 Plaintiff appealed two of the trial court's rulings: (1) the order dismissing the claims for willful and wanton supervision set forth in paragraphs 30(b) and 30(c) of two counts in the second amended complaint and (2) the order granting summary judgment for defendant on the remaining claims based on tort immunity. The appellate court reversed the trial court's judgment on both issues and remanded for further proceedings. 2018 IL App (1st) 170336, ¶¶ 32-33. On the first issue, the court held that the allegations of willful and wanton supervision were sufficient to defeat a motion to dismiss. *Id.* ¶ 17. On the second issue, the court held that defendant failed to prove its entitlement to immunity under section 2-201 and, thus, summary judgment was improper on the remaining willful and wanton claims.[3] *Id.* ¶¶ 18-28. The court held, "[i]n this case, even if Florek was in a position where he was entitled to make determinations of policy and exercise discretion, there is no evidence that he was making policy or exercising discretion with respect to the act or injury [*sic*] from which Andrews's injury resulted." *Id.* ¶ 21. "To the contrary, Florek testified and defendant has remained steadfast throughout the case that Florek did not know about the ladder configuration." *Id.* The court concluded, "[j]ust because a party has a right to exercise discretion does not mean that it did exercise discretion." *Id.* ¶ 28.

¶ 17 Defendant filed a petition for leave to appeal in this court, which we granted. Ill. S. Ct. R. 315(a) (eff. July 1, 2018). We also allowed the Illinois Association of Defense Trial Counsel to file an *amicus curiae* brief in support of defendant's position and the Illinois Trial Lawyers' Association to file an *amicus curiae* brief in support of plaintiffs' position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 18                                                    ANALYSIS

¶ 19 On appeal to this court, defendant asks that we reverse the appellate court's judgment and affirm the trial court's entry of summary judgment in its favor. Defendant challenges only the immunity portion of the appellate court's judgment. Thus, the only issue in this appeal is whether defendant established its immunity defense pursuant to sections 2-109 and 2-201 of the Tort Immunity Act.

¶ 20 A party is entitled to summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). Because summary judgment is a drastic means of disposing of litigation, the trial court must construe the evidence in the record strictly against the movant. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Furthermore, the court should grant summary judgment only if the movant's right to a judgment is clear and free from doubt. *Id.* On review of the trial court's order granting summary judgment, this court must determine

---

[3]We note that the appellate court incorrectly stated that summary judgment was entered as to "plaintiff's claims based on simple negligence." 2018 IL App (1st) 170336, ¶¶ 8, 18. In fact, the trial court had previously dismissed the negligence claims, and plaintiff did not appeal that dismissal order. Thus, the only claims at issue on summary judgment were those alleging willful and wanton conduct. We conclude that the appellate court's mischaracterization of the claims did not affect its resolution of the tort immunity issue.

whether the existence of a genuine issue of material fact should have precluded the dismissal of the case or, absent such an issue of fact, whether summary judgment was proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

¶ 21    We review *de novo* the trial court's order granting summary judgment. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385 (1996). This case involves statutory interpretation, an issue of law also subject to *de novo* review. *Brunton v. Kruger*, 2015 IL 117663, ¶ 24.

¶ 22                                    Tort Immunity Act

¶ 23    In 1959, this court abolished sovereign immunity from tort claims for local governmental entities. *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11, 24-25 (1959). In response to that decision, in 1965, the General Assembly enacted the Tort Immunity Act. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 43 (1998); see also Ill. Const. 1970, art. XIII, § 4 (recognizing the abolition of sovereign immunity, "[e]xcept as the General Assembly may provide by law"). The Tort Immunity Act governs whether and under what circumstances local governmental entities are immune from liability in civil actions. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 340 (1998). Unless a specific immunity provision applies, a public entity is liable in tort to the same extent as a private party. *Barnett*, 171 Ill. 2d at 386. Since the Tort Immunity Act is in derogation of the common law, it must be construed strictly against the public entity seeking immunity. *Snyder v. Curran Township*, 167 Ill. 2d 466, 477 (1995). In addition, the public entity or employee asserting an immunity defense bears the burden of proving it is entitled to that immunity. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370 (2003).

¶ 24    In construing the provisions in the Tort Immunity Act, we bear in mind that the primary goal of statutory construction is to discern and effectuate the intent of the legislature. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 24. The best indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 181 (2007). A reviewing court may not read into the statute any exceptions, conditions, or limitations that conflict with the clear legislative intent. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18. However, in interpreting the statutory language, we may consider the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 45.

¶ 25    Sections 2-109 and 2-201 of the Tort Immunity Act provide as follows:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2012).

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* § 2-201.

¶ 26    Read together, these sections shield a municipality from liability for the discretionary acts or omissions of its employees. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 118 (2008). Discretionary immunity for public officials is "premised upon the idea that such officials should be allowed to exercise their judgment in rendering decisions without fear that a good-

faith mistake might subject them to liability." *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 472 (2001) (citing *White v. Village of Homewood*, 285 Ill. App. 3d 496, 502 (1996)). Section 2-201 provides absolute immunity for both negligence and willful and wanton conduct. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 195-96 (1997). This court has recognized that the broad immunity in section 2-201 "offers the most significant protection afforded to public employees under the [Tort Immunity] Act." *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 484 (2002) (citing David C. Baum, *Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act*, 1966 U. Ill. L.F. 981, 994).

¶ 27 By its plain language, section 2-201 immunizes a public employee who serves in "a position involving the determination of policy or the exercise of discretion" from liability for injuries allegedly caused by the employee's "act or omission in determining policy when acting in the exercise of such discretion." 745 ILCS 10/2-201 (West 2012). As this court has noted, the statutory language "is concerned with both *the type of position* held by the employee and *the type of action* performed or omitted by the employee." (Emphases in original.) *Harinek*, 181 Ill. 2d at 341. Thus, the test for determining whether a municipality is entitled to discretionary immunity is twofold. *Id.* The municipal defendant must establish that (1) the employee held either a position involving the determination of policy *or* a position involving the exercise of discretion and (2) the employee engaged in *both* the determination of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *Id.*

¶ 28 Policy determinations are defined as decisions requiring the public entity or employee to balance competing interests and make a judgment call as to what solutions will best serve each of those interests. *Harrison*, 197 Ill. 2d at 472 (citing *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992)). Such interests may include safety, convenience, and cost. *West*, 147 Ill. 2d at 11. Exercises of discretion are those that are "unique to a particular public office." *Snyder*, 167 Ill. 2d at 474. An employee's act or omission will be deemed discretionary where the employee has exercised "personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed.' " *Monson v. City of Danville*, 2018 IL 122486, ¶ 30 (quoting *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 394-95 (2000)). Determining whether an act or omission is discretionary should be made on a case-by-case basis depending on the particular facts and circumstances. *Snyder*, 167 Ill. 2d at 474.

¶ 29 The only disputed issue in this appeal is whether Florek exercised discretion and made a policy determination in connection with the alleged acts or omissions that resulted in plaintiff's injuries. If the answer is "no," then the District has not established its affirmative defense of immunity under section 2-201 of the Tort Immunity Act. See *Van Meter*, 207 Ill. 2d at 379 (to invoke immunity under section 2-201, a municipal defendant is required to establish both elements with respect to the alleged act or omission).

¶ 30 This court's recent decision in *Monson* controls our analysis in this case. The plaintiff in that case sued the City of Danville for her injuries after tripping and falling on an uneven seam in a sidewalk. *Monson*, 2018 IL 122486, ¶ 1. The City moved for summary judgment, asserting discretionary immunity under sections 2-201 and 2-109 of the Tort Immunity Act. *Id.* In support of this defense, the City provided evidence that its employees had completed a project to inspect and repair the city's downtown sidewalks approximately one year prior to plaintiff's

accident. *Id.* ¶ 34. It was uncontested that the sidewalk slabs involved in plaintiff's accident were within the subject area and were not repaired in the course of the project. Based on this evidence, the City argued that its employees effectively exercised discretion and made a policy determination not to repair the section of sidewalk that allegedly caused plaintiff's injuries. *Id.* We rejected this argument. *Id.* ¶ 32.

¶ 31    We held that a municipality seeking immunity under section 2-201 for the failure to repair a defective condition "must present sufficient evidence that it made a *conscious* decision not to perform the repair. The failure to do so is fatal to the claim." (Emphasis added.) *Id.* ¶ 33. We held that, in the absence of a conscious decision on the part of the municipality, "nearly every failure to maintain public property could be described as an exercise of discretion," which constitutes an " ' "impermissibly expansive definition of discretionary immunity." ' " *Id.* ¶ 35 (quoting *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 768 (1996), quoting *Snyder*, 167 Ill. 2d at 472).

¶ 32    To illustrate the standard of proof required by the statute, we favorably cited two appellate court decisions—*Gutstein v. City of Evanston*, 402 Ill. App. 3d 610 (2010), and *Corning*, 283 Ill. App. 3d 765. *Monson*, 2018 IL 122486, ¶ 33. In *Gutstein*, the city claimed it was immune from liability for the plaintiff's injuries resulting from tripping and falling in an unimproved alley. *Gutstein*, 402 Ill. App. 3d at 611-12. The appellate court rejected the city's immunity defense, finding there was "nothing in the record to show that any work was done in the alley, certainly not how it was done." *Id.* at 626. In *Corning*, the appellate court held the defendants were not immune from liability for their failure to replace a missing stop sign where there was no evidence they were aware the sign was missing or made a conscious decision to remove it. *Corning*, 283 Ill. App. 3d at 768.

¶ 33    Similar to *Gutstein* and *Corning*, the record in *Monson* contained no documentation of the City's decision not to repair the specific sidewalk slab at issue. *Monson*, 2018 IL 122486, ¶ 35. We stated:

"While the City presented evidence that the [accident] site was included in an overall evaluation of its sidewalks, there are no facts regarding the City's assessment of the actual site. We do not know which factors were taken into account by the City in deciding not to repair the sidewalk. More importantly, we do not know whether anyone even took note of a sidewalk deviation at that location, or whether it was simply overlooked." *Id.* ¶ 38.

For these reasons, we held that the City failed to establish evidence that its handling of the sidewalk deviation constituted an exercise of discretion. *Id.*

¶ 34    Thus, according to our precedent, a municipal defendant asserting immunity under section 2-201 must present evidence of a conscious decision by its employee pertaining to the conduct alleged to have caused the plaintiff's injuries. It follows that, if the employee was totally unaware of a condition prior to the plaintiff being injured, he or she could not possibly have exercised discretion with respect to that condition. Notably, other jurisdictions that have reached the issue agree that a public entity claiming immunity for its employee's exercise of discretion must present evidence of a conscious decision on the part of the employee. See, *e.g.*, *Goss v. City of Globe*, 883 P.2d 466, 468-69 (Ariz. Ct. App. 1994); *Caldwell v. Montoya*, 897 P.2d 1320, 1326, 1327-28 (Cal. 1995) (*en banc*); *Greathouse v. Armstrong*, 616 N.E.2d 364, 367 (Ind. 1993); *Schmitz v. City of Dubuque*, 682 N.W.2d 70, 74 (Iowa 2004); *Kolitch v.*

- 9 -

*Lindedahl*, 497 A.2d 183, 197 (N.J. 1985); *Little v. Wimmer*, 739 P.2d 564, 569 (Or. 1987) (*en banc*); *Foster v. South Carolina Department of Highways & Public Transportation*, 413 S.E.2d 31, 35 (S.C. 1992); *Little v. Utah State Division of Family Services*, 667 P.2d 49, 51 (Utah 1983); *King v. City of Seattle*, 525 P.2d 228, 233 (Wash. 1974) (*en banc*); *Oyler v. State*, 618 P.2d 1042, 1048 & n.12 (Wyo. 1980); see also 63 C.J.S. *Municipal Corporations* § 886 (Sept. 2019 Update) ("Before immunity attaches, there must be some form of considered decision, that is, one that consciously balances risks and advantages."); 57 Am. Jur. 2d *Municipal, County, School, and State Tort Liability* § 66 (Nov. 2019 Update) ("The government must prove that the challenged act or omission was a policy decision made by consciously balancing risks and benefits.").

¶ 35 In this case, defendant has presented no evidence documenting a decision by its employees with respect to the condition involved in the accident. As the appellate court below held, the record contains no documentation of "any decision or refusal to decide whether to use the ladder configuration that resulted in Andrews being injured—there was no decision-making process at all." 2018 IL App (1st) 170336, ¶ 24. There is no evidence that Florek, defendant's resident engineer, exercised judgment or skill in making decisions about ladders or access platforms. Nor is there evidence that he balanced competing interests and made a determination as to what solution would best serve each of those interests. Florek admitted in his deposition that he was totally unaware of the two-ladder setup that allegedly caused Andrews's injuries. Therefore, he was unable to weigh the risks and benefits and make a conscious decision with respect to the condition involved in the accident.

¶ 36 Nevertheless, defendant argues that Florek's unawareness of the ladder formation does not defeat its discretionary immunity defense. According to defendant, the contract between the District and the Joint Venture delegated safety responsibilities to the contractor and gave its engineer the right, but not the duty, to involve himself in these decisions. Florek subsequently opted not to make any decisions concerning worker safety. Defendant contends that Florek's election not to weigh in on safety issues demonstrates a conscious exercise of discretion under section 2-201. We disagree.

¶ 37 Defendant appears to be characterizing its employee's choice not to make any safety decisions at all as an "omission." If so, this is a clear misreading of the statute. The plain statutory language states that the act or omission giving rise to the injuries must constitute both an exercise of discretion and a determination of policy. 745 ILCS 10/2-201 (West 2012); see *Harinek*, 181 Ill. 2d at 341. This language requires that the entity or person claiming immunity must have made an actual decision with respect to the acts or omissions giving rise to the injuries. Consequently, an "omission" must be construed as an affirmative decision to take no action given the circumstances. No such decision was made in this case. The most that can be said is that a decision was made by default, which is insufficient to invoke discretionary immunity. See, *e.g.*, *Corning*, 283 Ill. App. 3d at 768 (holding defendants could not claim discretionary immunity for the removal of a stop sign where it was removed without their knowledge or authority); *Goss*, 883 P.2d at 468-69 (holding defendant could not claim discretionary immunity where the city made no actual decision not to spend money on guardrails or sidewalks). Accordingly, as in *Monson*, we hold that defendant has failed to sustain its burden of proving that its employee exercised discretion and made a policy determination pursuant to section 2-201.

¶ 38     Our determination that defendant has not established its entitlement to immunity is consistent with the purpose and goals of the statute. The general purpose of the Tort Immunity Act is to "protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1(a) (West 2012). This court has held that the " 'operation of government' necessarily encompasses the policy decisions made by a municipality; that is, those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *West*, 147 Ill. 2d at 11.

¶ 39     The discretionary immunity now codified in section 2-201 was originally termed "quasi-judicial immunity." *Kennell v. Clayton Township*, 239 Ill. App. 3d 634, 642 (1992) (citing *Kelly v. Ogilvie*, 64 Ill. App. 2d 144, 147 (1965), *aff'd* 35 Ill. 2d 297 (1966)). The principle underlying this immunity is that public decision makers, like judges, should be free to make decisions and exercise their judgment based upon their best perception of public needs without fear of being subjected to a lawsuit. *Id.*; *White*, 285 Ill. App. 3d at 502. "The courts reason that any other rule would be a great hardship on public officials and would discourage citizens from seeking public positions." *Midamerica Trust Co. v. Moffatt*, 158 Ill. App. 3d 372, 376 (1987) (citing *McCormick v. Burt*, 95 Ill. 263, 266 (1880)).

¶ 40     As noted in the most recent edition of Prosser and Keaton on Torts, discretionary governmental immunity is also premised on the principles that "the judiciary should not invade the province of the executive branch of government by supervising its decisions through tort law, and that if liability were imposed for discretionary decisions, effective executive action would be chilled."   Prosser and Keaton on the Law of Torts § 131, at 1046 (W. Page Keeton *et al.* eds., 5th ed. 1984). These principles "counsel use of the immunity only when there is no 'predictable standard' for decision making, where there is room for difference in official judgment, and *where in fact some official judgment has been brought to bear on the governmental action that has caused the plaintiff harm*." (Emphasis added.) *Id.* at 1046-47. It follows that the policy reasons for granting immunity are furthered only when the government entity or its employee has engaged in actual decision making.

¶ 41     Defendant has failed to offer a policy rationale that justifies immunity for the making of no decision. Nor can we think of one. In the absence of a judgment call and a weighing of risks and benefits, there is nothing to protect. Any governmental entity can enter into a contract in which it reserves the right to make discretionary decisions. If this guarantees absolute immunity from liability, there is no incentive for local governments to supervise work or maintain their property. Rather, immunizing a nondecision would reward public officials and employees who ignore problems instead of addressing them. It also would broaden the scope of discretionary immunity well beyond what the legislature intended. As we have explained, defendant's theory that merely entering into a construction contract satisfies the statute is directly contrary to the plain language of section 2-201. The clear legislative intent is that, for immunity to apply, the governmental employee must actually "exercise" discretion and "determine" policy. See 745 ILCS 10/2-201 (West 2012). A contract provision giving a municipality the right to exercise discretion and determine policy at some future time is not equivalent to an actual exercise of discretion.

¶ 42     Defendant argues that *In re Chicago Flood*, 176 Ill. 2d 179, compels a different result. *In re Chicago Flood* involved a class action lawsuit filed against the City of Chicago for property

- 11 -

damage and economic loss suffered as a result of flooding in the tunnel beneath the central business district of the city. *Id.* at 183. Approximately one year prior to the flood, the City contracted with Great Lakes Dredge and Dock Company (Great Lakes) for the removal and replacement of wooden pilings at five bridges spanning the Chicago River. During this process, the tunnel wall was breached. *Id.* at 184-85. Seven months later, the tunnel breach opened, causing extensive flooding in buildings connected to the tunnel. *Id.* at 185. The class plaintiffs' numerous claims against the City included the failure to supervise Great Lakes' work, the failure to repair the tunnel after the breach, and the failure to warn of the dangerous condition. *Id.* at 185-86.

¶ 43     With respect to the failure to supervise claim, this court held that the City was immune from liability for negligence pursuant to section 3-108(a) of the Tort Immunity Act (745 ILCS 10/3-108(a) (West 1994)). *In re Chicago Flood*, 176 Ill. 2d at 193. In addition, we held that the City's allegedly negligent and willful and wanton supervision of Great Lakes was immunized by sections 2-109 and 2-201 of the Tort Immunity Act. *Id.* at 195-96. The class plaintiffs argued that discretionary immunity was inapplicable because, "once the City approved the pile driving plan, its actions ceased to be discretionary and became ministerial." *Id.* at 194-95. We rejected this argument, reasoning that,

> "[i]n the present case, the contract between the City and Great Lakes provided that 'the contractor shall not drive the pilings at any other location than that specified by the City,' and authorized the City to change its specifications. Thus, the City retained the discretion to locate the pilings in any location it thought best. [Citation.] This was a matter within the City's discretion for which there is immunity under the [Tort Immunity] Act." *Id.* at 195.

¶ 44     Relying on this language, defendant argues that a contract provision that retains a government entity's discretion to make decisions is sufficient to establish section 2-201 immunity without a further showing that discretion was consciously exercised. We disagree.

¶ 45     *In re Chicago Flood* was decided prior to *Harinek*, 181 Ill. 2d at 341, where this court addressed for the first time whether section 2-201 requires that a public entity's act or omission be both an exercise of discretion and a determination of policy. We held:

> "According to the statute, an employee may be granted immunity if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion. The statute is equally clear, however, that immunity will not attach unless the plaintiff's injury results from an act performed or omitted by the employee in determining policy *and* in exercising discretion." (Emphases in original.) *Id.*

¶ 46     Twenty years later, in *Monson*, we articulated the standard of proof required to satisfy the exercise of discretion element. *Monson*, 2018 IL 122486, ¶ 33. This court expressly held that a local public entity claiming immunity under section 2-201 must present evidence that it made a "conscious decision" with respect to the acts or omissions alleged in the complaint. *Id.* We further held that "[t]he failure to do so is fatal to the claim." *Id.* To the extent that *In re Chicago Flood* can be read as suggesting that a contract provision alone satisfies the exercise of discretion element in section 2-201, we now clarify that our most recent elucidation of the standard of proof is controlling. Furthermore, *Cabrera v. ESI Consultants, Ltd.*, 2015 IL App (1st) 140933, and any other decisions applying a lesser standard of proof are hereby overruled. See *id.* ¶ 125 (holding that a construction contract granting the City of Chicago the right to

- 12 -

reject methods used by contractors qualified the City for discretionary immunity). In this case, it was defendant's burden to support its immunity defense with evidence of conscious decision making, and it has failed to sustain that burden. See, *e.g.*, *Monson*, 2018 IL 122486, ¶¶ 38-39; *Gutstein*, 402 Ill. App. 3d at 626.

¶ 47 Defendant's final argument is based on public policy. Defendant contends that our reading of the statute imposes an undue hardship on local governments because it conflicts with a defendant's ability to assert a defense under section 414 of the Restatement (Second) of Torts. Restatement (Second) of Torts § 414 (1965). It is important to note that defendant is not arguing it owed no duty in this case. The existence of a duty is not at issue in this appeal. Rather, defendant is urging this court to interpret section 2-201 of the Tort Immunity Act in a manner compatible with a section 414 defense.

¶ 48 Section 414 of the Restatement is a recognized exception to the common-law rule that one who employs an independent contractor is not liable for harm caused by the acts or omissions of the independent contractor. *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶¶ 31, 33-35. This provision states:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

Thus, the existence of a duty under section 414, and liability for negligence generally, turns on the extent to which the hiring entity controls the work of the independent contractor. See *Carney*, 2016 IL 118984, ¶ 41.

¶ 49 Defendant argues that construing section 2-201 of the Tort Immunity Act to require evidence that a public entity involved itself in the contractor's work would deprive public entities of a defense under section 414 of the Restatement. Defendant reasons that public entities would be required to "go above and beyond what their contracts require" to control the work delegated to the contractor in order to sustain a tort immunity defense under section 2-201. This could impact a defendant's ability to claim it owed no duty to an injured plaintiff. Defendant argues, therefore, that section 2-201 should be read to allow a public entity to satisfy the statute through evidence that it entered into a contract reserving its right to exercise discretion. We reject defendant's argument.

¶ 50 A defense predicated on section 414 of the Restatement (Second) of Torts is not in conflict with tort immunity. Whether a local governmental entity owed a duty of care and whether it is entitled to immunity are discrete issues, which must be analyzed separately. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 46; *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001); *Barnett*, 171 Ill. 2d at 388. This court has noted that " '[t]he distinction between an immunity and a duty is crucial, because only if a duty is found is the issue of whether an immunity or defense is available to the governmental entity considered.' " *Coleman*, 2016 IL 117952, ¶ 46 (quoting *Zimmerman*, 183 Ill. 2d at 46). Moreover, section 2-201 of the Tort Immunity Act does not distinguish between a public entity who enters into a contract for construction work and one who does not. See 745 ILCS 10/2-201 (West 2012). All local governmental entities are held to the same standard. Accordingly, defendant's argument is not a valid reason to ignore the express, unambiguous language in the

statute.

¶ 51                                    CONCLUSION

¶ 52        Construing the Tort Immunity Act strictly against defendant, as we must (*Monson*, 2018
IL 122486, ¶ 15), we find that defendant has not met its burden of establishing discretionary
immunity under sections 2-109 and 2-201. We hold, therefore, that defendant is not entitled to
summary judgment as a matter of law.

¶ 53        For the foregoing reasons, we affirm the judgment of the appellate court, reverse the
judgment of the circuit court, and remand for further proceedings.


¶ 54        Appellate court judgment affirmed.

¶ 55        Circuit court judgment reversed.

¶ 56        Cause remanded.


¶ 57        JUSTICE KARMEIER, dissenting:

¶ 58        This case differs from *Monson v. City of Danville*, 2018 IL 122486—which the majority
finds controlling, and the genesis of a "conscious decision" rule—in that *Monson* concerned
the governmental entity's endeavor to inspect its own sidewalks and effect its own repairs.
This case, in contrast, speaks to a governmental entity's employment of an intermediary, a
construction contractor, to carry out the work with the contractor's own workers under the
direct supervision of the contractor's personnel, but with the governmental entity's retained
contractual authority to "disapprove or reject" procedures it deemed "inadequate or unsafe."[4]
Retained contractual authority, where a contractor was employed to do the work, is what *In re
Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), and *Cabrera v. ESI Consultants, Ltd.*, 2015
IL App (1st) 140933, specifically addressed and what the cases cited by the majority do not.

¶ 59        Whether one agrees or disagrees with the holding of *Chicago Flood*—that the City was
entitled to absolute immunity under sections 2-109 and 2-201 because it retained contractual
oversight and discretion with respect to the matter resulting in injury—that decision is the law

_____

[4]The contract provided:

    "The Contractor shall determine the procedure and methods and also design and furnish all
    temporary structures, sheeting, bracing, tools, machinery, implements and other equipment and
    plant to be employed in performing the work hereunder, and shall promptly submit layouts and
    schedules of his proposed methods of conducting the work to the Engineer for his approval. The
    use of inadequate or unsafe procedures, methods, structures or equipment will not be permitted,
    and the Engineer may disapprove and reject any of same which seem to him to be unsafe for the
    work hereunder, or for other work being carried on the vicinity or for work which has been
    completed or for the public or for any workmen, engineers and inspectors employed thereon, or
    that interferes with the work of the Water Reclamation District or other contractors, or that will not
    provide for the completion of the work within the specified time, or that is not in accordance with
    all the requirements herein specified."

    No one disputes the terms of the contract, which was made a part of the record in this case. Although
there are numerous other contractual provisions specifying that the contractor was solely responsible
for safety, the foregoing paragraph unequivocally grants the defendant's on-site engineers discretion
and policy oversight with respect to safety.

until it is overruled, and in doing that, "[w]e may not depart from *stare decisis* without special justification." *Iseberg v. Gross*, 227 Ill. 2d 78, 101 (2007); see also *People v. Hernandez*, 231 Ill. 2d 134, 144-45 (2008). In this context, I think a recent observation of Justice Thomas *does* apply:

> "If the majority believes this court's cases are in error, it needs to overrule them. If it believes that the court made a mistake, then it should own the mistake rather than claiming that our cases say something other than what they clearly say. However, this would require a discussion of why departure from *stare decisis* is appropriate, which may be difficult. *Stare decisis considerations are at their apex in matters of statutory construction.*" (Emphasis added.) *People v. Dupree*, 2018 IL 122307, ¶ 69 (Thomas, J., specially concurring, joined by Kilbride, J.)

The majority simply suggests that our jurisprudence has evolved past *Chicago Flood*—a suggestion voiced in no case previous to this in the course of the last 22 years—and that the majority is merely "clarifying" the law with "our most recent elucidation of the standard of proof." *Supra* ¶ 46. Yet in truth, this court is effectively overruling *Chicago Flood*.

¶ 60    The court *specifically* overrules *Cabrera*, lumping it in with "any other decisions applying a lesser standard of proof" than that applied by the majority. *Supra* ¶ 46. However, *Cabrera* merely applies the clear holding of *Chicago Flood*, to even more compelling circumstances,[5] and the *Cabrera* court does not espouse a significantly different standard of proof than that the majority applies (see *Cabrera*, 2015 IL App (1st) 140933, ¶ 122), other than omission of the newly recognized "conscious decision" doctrine.

¶ 61    So, where does the "conscious decision" rule go from here? How will it be applied to cases where public entities employ contractors?

¶ 62    My first concern is that the rule announced today may, in the future, result in the unintended consequence of *less* safety supervision on construction sites, not more. Governmental entities may well attempt to do in contracting what this defendant's engineers did while testifying:[6]

---

[5]The contract language in *Cabrera* is very similar to the contract provisions in this case. However, the City's engineer (Shum) in *Cabrera*, while emphasizing that the contractor was solely responsible for safety, also freely admitted—unlike the engineers here—that he had the authority to shut down the construction project for safety violations if he saw fit. He had the discretion; he could determine policy on site:

> "Shum testified that safety was not the City's responsibility, and the City did not require a site-specific safety plan. Shum did not have any role on this project with respect to jobsite safety; safety was the contractor's responsibility. The contractor was responsible for determining what the workers needed for safety. He testified that if he observed anything unsafe he would inform the foreman. He testified that if he observed grease and slippery surfaces at the preconstruction meeting, he would tell the contractor to clean it up because it was the contractor's responsibility to keep the site clean. ***
>
> Shum testified that he had the authority to stop work if he observed something hazardous or dangerous at a jobsite. He had the ability to shut down the whole project." *Cabrera*, 2015 IL App (1st) 140933, ¶¶ 46-47.

[6]The engineers in this case chose to interpret—or at least claimed to have interpreted—the contract in a way that could negate duty by ceding all control over matters of safety to the contractor. (The majority takes pains to emphasize: "It is important to note that defendant is not arguing it owed no duty

lay responsibility for overseeing safety solely at the door of the contractors. In *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶¶ 31-39, we addressed the nuanced consequences of control—or divestiture thereof—in work performed by a contractor on behalf of someone else. This court noted: "Under the common law, one who employs an independent contractor is not liable for harm caused by the latter's acts or omissions." *Id.* ¶ 31. However, " '[t]he test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent.' " *Id.* (quoting *Hartley v. Red Ball Transit Co.*, 344 Ill. 534, 539 (1931)). Thus, applying that test, if the hiring entity retains *any* right of advisory supervision over safety concerns, the entity could be liable—in this instance—for willful and wanton conduct. The solution for one hiring a contractor is to vest the contractor with sole responsibility for safety. That would result in *fewer* eyes focused on safety, not more.

¶ 63     Moreover, on a pragmatic level, the "conscious decision" rule today runs counter to our analysis of negligence in selecting a contractor in *Carney*. If the " 'character of the work to be done *** can be properly done only by persons possessing special skill and training,' " a municipality will likely be less able to exercise the conscious decisions in day-to-day operations necessary to claim discretionary immunity. *Id.* ¶ 66 (quoting Restatement (Second) of Torts § 411 cmt. c, at 378 (1965)). Municipalities employ contractors for a multitude of tasks, for many of which the public entity may possess little or no expertise. This is a case in point: the engineers who had the authority to exercise the retained contractual right of supervision over safety acknowledged in their depositions that they had no training whatsoever in matters relating to safety. To impose the duty of rendering decisions in all of a contractor's day-to-day minutiae to avoid liability not only contradicts the utility of subcontracting but, in highly specialized tasks, may be practically inconceivable.[7]

¶ 64     Given these considerations, in the future, decisions might well be made to sacrifice control over safety measures in order to minimize potential liability.

¶ 65     My second concern is that this "conscious decision" rule will come to require the articulation of "magic words" evincing a conscious decision, a requirement that ignores what may be reasonably inferred from conduct and circumstance. The engineers in this case, via their interpretation of the contract, effectively ceded oversight over matters of safety to the contractor. They did not say that was their conscious decision, but that was clearly *their*

in this case. The existence of a duty is not at issue in this appeal." (*supra* ¶ 47)) Admittedly, the defendant in this case tried to have it both ways: defendant claimed discretionary immunity, via retained contractual control, under sections 2-109 and 2-201, and it attempted to negate any duty to the plaintiffs through deposition testimony of defendant's engineer-supervisors and representatives of the contractor, to the effect that the *contractor* was solely responsible for safety on the construction project. Patrick Healy, the contractor's foreman, admitted in his deposition testimony that Florek could, through the contractor's superintendent, stop work if he observed an unsafe practice. Irrespective of how the engineers chose to interpret the contract, a conscious decision was made that impacted supervision of safety on the project.

[7]Although not at issue here, I would note that the amount of care we require to avoid liability in selecting a contractor, when the work "can be properly done only by persons possessing special skill and training," evinces a "conscious decision" that the majority would require for discretionary immunity.

determination of policy and responsibility on the job site. Thus, even if the contractual right to control is not enough alone, as it was in *Chicago Flood*, to accord the entity immunity, the engineers' interpretation and implementation of supervisory obligations on the job site would nonetheless suffice to accord the entity immunity.

¶ 66 But what if the facts are as plaintiff alleges in her complaint? What if the engineers in fact witnessed all the safety concerns and silently chose to do nothing, having it in their power to act? Is that not a conscious decision that would entitle the defendant to immunity? Ahrens, the director of public works in *Monson*, *could not recall* inspecting or measuring the particular slab of concrete where plaintiff fell. No conscious decision. The majority here opines: "In this case, defendant has presented no evidence documenting a decision by its employees with respect to the condition involved in the accident."[8] *Supra* ¶ 35. Well, what supervisory deficiencies *has* this plaintiff alleged of defendant?

¶ 67 Plaintiff alleged that defendant,

"with an utter indifference and a *conscious disregard* for plaintiff's safety:

a. allowed workers to work upon effluent chambers without the use of access platforms, when it *had actual knowledge* that employees were previously not using them;

b. failed to supervise their employees on site when *it knew* of previous occasions when crews were working without fall protection;

c. wilfully failed to implement its fall protection plan by not providing supervision by a competent person;

d. wilfully failed to provide an offset platform or landing between the portable ladder and the 43' fiberglass extension ladder, when *it had actual knowledge* that offset platforms were previously not being used;

e. failed to implement a mandatory fall protection plan when *it had actual knowledge* of prior occasion [*sic*] when employees were not utilizing fall protection;

f. failed to implement a safety plan when *it had actual knowledge* that employees were transitioning from makeshift ladders to extension ladders without access platforms;

g. wilfully failed to provide an adequate or suitable scaffold or ladder for Jeffrey Andrews to carry out his work *when it knew* Jeffrey Andrews was transitioning without an access platform;

h. required the F.H. Paschen, S.N. Nielsen & Associates, LLC crew members to work around the subject settling tank *when it knew* it was extremely muddy *and knew* that the inside of the chamber contained excessive water;

---

[8]Does an entity retaining supervisory control over a contractor even *have* to be aware of the condition involved in the accident? In an appropriate case, where discretion and policy decisions are made with respect to the creation and maintenance of a system of supervision and oversight, does the failure to find and address the condition in question necessarily preclude immunity? If it does, then the entity's required degree of involvement would seem to be commensurate with that of the contractor itself. That would certainly entail a dramatic shift in the allocation of human resources in governmental construction projects.

i. *knowingly* allowed Jeffrey Andrews to work in a confined work site in sloppy, rainy, muddy, and wet weather conditions;

j. *wilfully* failed to provide a wide enough opening so that the slope of the ladder could be adequately extended, allowing Jeffrey Andrews to work safely *when it knew* the opening was too small to allow for a proper slope of the ladder;

k. *wilfully* failed to provide fall restraints to Jeffrey Andrews *when it knew* Jeffrey Andrews did not have fall restraints during the transitioning stage;

l. [the District's] on-site engineer *wilfully* failed to provide the necessary requirements for water site control, as per the contract;

m. *wilfully* failed to provide safe, suitable site-control to Jeffrey Andrews, as per the contract; and

n. *knowingly* failed to properly monitor the work activities of the F.H. Paschen, S.N. Nielsen & Associates, LLC crew members." (Emphases added.)

¶ 68    So, *according to plaintiff*, defendant, with "conscious disregard" for Andrews's safety, knowing all those things, failed to act. Is that something other than a "conscious decision?" If plaintiff proves the very things she professes provable in her complaint, has *plaintiff* not made the case that defendant, through its engineers on site, made a conscious decision *not* to act— the final requisite for immunity under the new analytical standard? Or are we to assume the engineers were devoid of any mental processes whatsoever?

¶ 69    "Section 2-1005 of the [Code] provides for summary judgment when *the pleadings*, depositions, and *admissions on file*, together with any affidavits, show that there is no genuine issue as to any material fact ***." (Emphases added.) *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007); 735 ILCS 5/2-1005 (West 2012). Plaintiff has, presumably in good faith, claimed in her complaint that the defendant's engineers *knew* of the dangerous conditions and did nothing. Taking those allegations as true, the defendant would be entitled to immunity under sections 2-109 and 2-201.

¶ 70    In light of the foregoing concerns, I cannot subscribe to the majority decision.

¶ 71    JUSTICE GARMAN joins in this dissent.