2019 IL App (3d) 180613

Opinion filed August 29, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| SAMANTHA BIANCOROSSO, a Minor, by her Mother, TINA BIANCOROSSO, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0613 Circuit No. 16-L-456 |
| TROY COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 30C, | ) ) ) | Honorable |
| Defendant-Appellee. | ) ) ) | Raymond E. Rossi Judge, Presiding |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Carter and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff Samantha Biancorosso, a sixth-grade student at defendant Troy Community Consolidated School District No. 30C (District), was injured at cheerleading practice and brought a complaint alleging that the District's willful and wanton conduct caused her injuries. The District moved for summary judgment, which the trial court granted. Biancorosso appealed. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        Plaintiff Samantha Biancorosso, a minor, by her mother, Tina Biancorosso, filed a complaint against defendant District, alleging the Troy Community Consolidated School District No. 30C acted negligently during cheerleading practice, resulting in injuries to Samantha, and asserting claims for Samantha's medical expenses. The complaint set forth the following as negligent conduct: failure to take adequate safety precautions; failure to provide sufficient supervision and spotters; failure to supervise and observe routines and maneuvers; and failure to supervise, train, or monitor cheerleading coaches regarding proper safety precautions and equipment. The complaint asserted that Samantha was "tossed" in the air while practicing on "thin gymnastics mats" on a tile floor, with inadequate spotters and without observation by a supervising adult. Samantha filed an amended complaint, replacing the negligence allegations with willful and wanton claims. The willful and wanton claims mirrored the negligence claims but substituted willful and wanton conduct for negligence. The District moved to dismiss, which was heard and denied, and answered the complaint, asserting affirmative defenses.

¶ 4        The District moved for summary judgment and attached to its motion various depositions. Tina, Samantha's mother, testified that her daughter's cheerleading injury resulted in surgery, a hospital stay, a cast on Samantha's arm, and three scars. Samantha continued to experience some pain on occasion. Samantha first became involved in cheerleading in the sixth grade. Tina had no concerns about Samantha performing stunts such as the pyramid, which she had performed at several basketball games before the injury. She had no concerns about the mats used at practice. She did not voice any concerns to Samantha's coach. Tina had read and signed the District's "Extra-Curricular Athletic/Activity and Concussion Information Permission Form." The form acknowledged that there were "special dangers and risks" associated with extracurricular activities, including falls and broken bones.

¶ 5 Samantha testified at her deposition that she was currently in the eighth grade and had stopped cheerleading after sixth grade as she was more interested in dance. She returned to cheerleading after her injuries healed and was involved in poms in the seventh and eighth grades. She had pursued cheerleading more for poms because it included dance routines and because cheerleading and poms were together at the sixth-grade level. She had been involved in tumbling since she was five years old. She had performed other cheerleading stunts before but was attempting the one in which she was injured for the first time. The stunt involved girls acting as a base and she performing as the flyer. She asked to be the flyer. She tried the stunt several times with the coach present. Although she was wobbly when first attempting it, she was not unprepared. She could have asked for additional spotters if she felt uncomfortable. Samantha did not tell anyone she was scared; rather, she felt ready for the stunt. However, while attempting it, she tilted and fell, putting her arm out to break the fall. She landed on the mat. Cheer mats covered the entire floor.

¶ 6 Jaclyn Doumanian was deposed and testified that she was the sixth-grade cheer coach from August 2015 to January 2016. She had no previous experience coaching or any certification to do so. She shadowed the junior varsity and varsity coaches and practiced with them. She also took an online safety training course. She held a meeting where the parents were informed about safety and required to complete a permission form. When practice was held in the school cafeteria, they used cheer mats to cover the tile floor. The three coaches, including herself, were responsible for placing the mats before practice with the cheerleaders' help. The mats covered the entire floor and were inspected before practice for rips, tears, or problems and to ensure the mats were properly connected to each other. There were no complaints about the mats. The sixth graders did not perform throwing stunts. The stunt during which Samantha was hurt included

two spotters, two bases and a flyer. Doumanian would teach the stunts and make sure the girls were comfortable performing them without her help but in her presence. Samantha was not a regular flyer but Doumanian coached her about the particular stunt. Initially, Samantha had trouble standing up in the stunt, which was normal. Samantha tried the stunt a couple of times and performed it correctly two or three times. Doumanian was working with Samantha and her group for approximately 15 minutes. If she believed Samantha was uncomfortable or unable to perform the stunt, she would have stayed and kept working with her. Doumanian made sure Samantha was comfortable performing it before she moved to work with a different group of girls. The group was located about 20 feet from Samantha's group.

¶ 7     Julie Brandolino testified at her deposition as follows. She was the head cheer coach for 10 years, leaving the position in 2016. She conducted safety meetings with the other coaches. They used cheer mats rather than tumbling mats because they were safer. The mats were inspected before each use and were compliant with the standards of the Illinois High School Association (IHSA) and the Illinois Elementary School Association (IESA). The District bought the mats used from Wilmington High School.

¶ 8     Megan DeGroot was deposed and testified that she was the District's athletic director and activities director for grades kindergarten through eighth. She oversaw the coaches and activities. The cheer mats were certified by the IHSA and IESA and were in warranty. The standard practice was for the mats to be rolled out and inspected before practice, and if there was a mat problem, practice would be cancelled. She inspected the mats weekly and had done so in the days preceding Samantha's accident and in the days after and found no problems.

¶ 9     The trial court granted the District's summary judgment motion but stayed it to allow Samantha time to amend her complaint. When Samantha did not file a second amended

complaint, the court again entered a summary judgment order in favor of the District. Samantha appealed.

¶ 10                                              II. ANALYSIS

¶ 11        The sole issue on appeal is whether the trial court erred when it granted the District's summary judgment motion. Samantha argues that facts exist to support her claim that the District's coaches allowed her to practice an "inherently dangerous cheerleading maneuver," knowing she was not prepared to perform it without "close adult supervision." According to Samantha, summary judgment was inappropriate because the facts in dispute demonstrate that the District acted willfully and wantonly, resulting in her being injured.

¶ 12        Summary judgment is appropriate where the pleadings, depositions, admissions on file, and affidavits, if any, establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). All facts should be construed in favor of the nonmovant, and "where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact," summary judgment should not be granted. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). We review a trial court's grant of summary judgment *de novo*. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004).

¶ 13        To sustain a claim for willful and wanton conduct, a party must establish the elements of negligence, including that the defendant owed the plaintiff a duty, defendant breached the duty, and the breach caused the plaintiff's injuries. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). The plaintiff must also establish that the defendant deliberately intended to harm the plaintiff or displayed an utter indifference toward or conscious disregard for the

plaintiff's welfare. *Harris v. Thompson*, 2012 IL 112525, ¶ 41 (citing 745 ILCS 10/1-210 (West 2002)). The plaintiff must demonstrate that the defendant knew of the impending danger and failed to exercise ordinary care to prevent it or recklessly and carelessly failed to discover the danger. *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 429 (1980) (citing *Klatt v. Commonwealth Edison Co.*, 33 Ill. 2d 481, 488 (1965)).

¶ 14    Samantha's amended complaint alleged that the District was willful and wanton by allowing her to perform stunts "in a location and on a surface" the District should have known was hazardous and failed to take adequate safety precautions; by allowing her to practice "potentially hazardous routines" without adequate supervision and/or spotters; by failing to supervise or observe Samantha while she performed "potentially hazardous routines and maneuvers"; and by failing to supervise, train, and monitor the cheerleading coaches regarding safe practices and use of safety measures and precautions.

¶ 15    Samantha's claims of inadequate safety precautions, supervision, and proper equipment are belied by the record. The deposition testimony established that the District used cheer mats, which were still in warranty and IHSA- and IESA-compliant, for cheerleading practice. The mats were inspected by the coaches prior to practice and on a weekly basis by the athletic director. To prepare for practice, the coaches and cheerleaders unrolled and positioned the mats. The coaches inspected the mats before each practice to ensure they were properly placed and connected to each other. The District policy prohibited practice if there was a problem with the mats. The District had not received any complaints regarding the mats. Samantha testified that the mats covered the entire floor of the practice area and it is undisputed that Samantha landed in the middle of a mat after her fall. Samantha did not present any facts that the mats were in disrepair or not positioned properly at practice. The District took sufficient safety precautions to protect

6

Samantha from injury and the fact that she was injured despite its efforts does not equate to a finding of willful and wanton conduct. See *Barr v. Cunningham*, 2017 IL 120751, ¶ 18 (where school used some precautions to protect students from being injured, its employees were not willful and wanton even where the precautions were insufficient and a student was injured).

¶ 16    The evidence also demonstrated that there was sufficient supervision during the practice. Doumanian explained she worked with Samantha until Samantha was comfortable with the stunt and that she would not have left Samantha's group had Samantha or others in the group had any concerns. Samantha did not feel she needed additional spotters and felt ready to perform the stunt. Doumanian and Samantha gauged that Samantha was ready to perform the stunt on her own. According to both deponents, two girls lifted Samantha from each side for the stunt, while two other girls acted as spotters in front of and behind her. Doumanian remained in the general area where Samantha's group was practicing, moving approximately 20 feet to help another group. The facts are not in dispute that the District employed adequate supervision. See *Lynch*, 82 Ill. 2d at 430 (even inadequate sports supervision did not rise to level of willful and wanton conduct).

¶ 17    Samantha further alleged that the routines were potentially hazardous and that Samantha was "tossed" in the air. Samantha additionally alleged that the District failed to monitor the coaches to ensure they properly and safely conducted cheerleading practice. Doumanian testified that the sixth-grade routines did not include tossing students in the air and that she ensured the stunts they attempted were suitable for their ages and skill level. Doumanian explained that she shadowed the other coaches and took an online safety course, in addition to reading the materials provided by the District. Samantha explained the stunt and how the girls acting as base held her feet throughout it and that she had sufficient spotters. Moreover, despite Samantha's claims, she

7

did not offer any evidence that the District was aware of impending danger regarding the cheerleading stunts. She did not present any instances of prior injuries to other cheerleaders. There were no complaints regarding the condition or use of the mats during practice. Tina testified that she was unconcerned regarding the other stunts her daughter had performed and had no concerns about the mats. She was aware of the risks and dangers associated with cheerleading, including the possibility of broken bones. Accordingly, Samantha's claim that the District knew and disregarded the possibility of impending danger is without merit. See *Washington v. Chicago Board of Education*, 204 Ill. App. 3d 1091, 1094-95 (1990) (willful and wanton claim properly dismissed where facts did not show that site of injury was unreasonably dangerous or that defendant knew or should have known of the danger).

¶ 18    Samantha did not present any evidence the District acted willfully and wantonly. The undisputed facts demonstrate that the District took safety precautions, that the mats were sufficient, and that there was adequate adult supervision. Thus, there is no genuine issue of material fact that Samantha's injuries did not result from willful and wanton conduct by the District. We thus find the trial court did not err when it granted summary judgment in favor of the District.

¶ 19                                     III. CONCLUSION

¶ 20    For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 21    Affirmed.

8

| | |
|---|---|
| **Cite as:** | *Biancorosso v. Troy Community Consolidated School District No. 30C*, 2019 IL App (3d) 180613 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 16-L-456; the Hon. Raymond E. Rossi, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas P. Polacek, of McNamara Phelan McSteen, LLC, of Joliet, for appellant. |
| **Attorneys for Appellee:** | Monica E. Banet, of Law Offices of Lawrence Cozzi, of Warrenville, for appellee. |