**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230369-U

Order filed November 14, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| KEVIN HAASE and RILEY HAASE, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiffs-Appellants, | ) | Kankakee County, Illinois, |
| | ) | |
| | ) | Appeal No. 3-23-0369 |
| v. | ) | Circuit No. 18-L-12 |
| | ) | |
| KANKAKEE SCHOOL DISTRICT 111 and | ) | |
| DARREN WILBUR DAYHOFF, | ) | Honorable |
| | ) | Lindsay Parkhurst, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Justice Hettel dissented.

_____

**ORDER**

¶ 1    *Held*: Summary judgment was improper because there are disputed issues of material fact. Reversed and remanded.

¶ 2    Plaintiffs filed a two-count complaint against defendants Kankakee School District 111 (District) and Darren Dayhoff (Dayhoff), alleging defendants (1) engaged in willful and wanton conduct and (2) were liable for plaintiffs' expenses under the Family Expense Act (750 ILCS 65/15 (West 2016)). The circuit court granted defendants' motion for summary judgment, finding

defendants were immune from liability under section 2-201 of the Local Government and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2016)). For the following reasons, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4        On March 13, 2017, Riley Haase was injured by a classmate (Student A) while playing soccer in Dayhoff's physical education class at Kankakee Junior High School. These are essentially the only facts the parties agree on. The accounts below were taken from depositions.

¶ 5        According to Riley, class started as usual. Dayhoff took attendance and placed basketballs and soccer balls in the middle of the gymnasium, allowing students to choose their activity. Riley and his friend, Jacob Gilreath, chose to play soccer. Generally, except for the first and last ten minutes of class, Dayhoff minded his own business on his laptop or phone and sat in the corner of the gym with his feet up on a desk. That day, Dayhoff sat at the desk with his laptop open during class. Student A, who was not part of the soccer game, interfered with the game and tried to grab the ball. Student A had a reputation for being a troublemaker. Riley picked up an out-of-bounds ball; the next thing he knew, Jacob was walking him over to Dayhoff, yelling that Riley had been tackled into a wall and knocked out of his shoes. Dayhoff told them, "It'll be fine, go back to class." According to Riley, he was never taken to the office that day, and he was in a lot of pain.

¶ 6        Jacob was in the same gym class. He saw Student A "running around being obnoxious" that day. He believed Student A was being unnecessarily rough and shoving students playing soccer. Riley ran to the wall to get a ball and Student A ran at full speed after him, shoulder-checking Riley into the wall. Riley lay on the ground, not moving, for 30 seconds. Jacob brought Riley over to Dayhoff, who was sitting at his desk. Jacob told Dayhoff what happened, and Dayhoff told them that it would be fine and to go sit against the wall. After class, Jacob took Riley

2

to the office. Before this incident, Jacob knew Student A to be physically aggressive and heard about him being in fights. He had also seen Dayhoff on his cellphone and laptop during class in the past.

¶ 7     According to Dayhoff, at the time of the incident, he was in the southeast corner of the gym because he could see everything without needing to turn his head. There was a desk in that corner, but he did not sit there during the entire class. If he brought his laptop to class, he would place it on the desk. Dayhoff did not regularly use his laptop during class. However, he might have used it to look at work-related emails. He carried his personal phone in class but only ever checked it briefly.

¶ 8     Normally, students not dressed in gym uniform would sit out during that class, but Dayhoff periodically allowed them to participate. Dayhoff initially said he did not remember if Student A was dressed for class on the day in question. Later, he said Student A was not dressed in his gym uniform, so Student A started class on the sideline. Dayhoff allowed Student A to play soccer. He did not see Student A engage in any aggressive or unwanted physical contact with other students that day. Student A "was playing soccer just like the rest of them." According to Dayhoff, if he saw Student A engaged in aggressive physical contact with the other students, Student A "would have been removed from the game because he was not dressed[.]" Dayhoff did not see Riley get injured. He saw a group of students, including Riley and Student A, battling for the soccer ball. The first time he learned about Riley's injury was when Riley and Jacob came over to him during class. He said Riley seemed fine but said his arm hurt, so he sent Riley and Jacob to the front office.

¶ 9     Dayhoff did not recall having any disciplinary problems with Student A throughout the school year. Nor did he recall being told about any student's disciplinary history. Dayhoff was

3

surprised to hear that Student A had 29 reported disciplinary issues from August 2016 to March 2017. The only problems he had with Student A involved not dressing for gym class, not participating, or goofing off.

¶ 10    Fiona Walz was the assistant principal who oversaw discipline for the seventh grade. A violation of the student code of conduct was called a "referral," and Student A received referrals, but she did not recall any of their details. She communicated to staff that Student A needed increased supervision for his wandering, but she did not believe he was physically aggressive.

¶ 11    Sarah Lenfield was the school counselor. She worked with Student A on several occasions. She did not believe he was physically aggressive. Although Student A was involved in some fights, he was often the target. He was not prone to initiate fights. Lenfield "never got any notifications about teachers' concern about the aggression for [her] to work on that one on one. It was more peer relationship and social settings, where [Student A] functioned at a very lower level than his typical age group would."

¶ 12    Charles Hensley was the principal. He believed Riley was sent to the office on the day of the injury because he recalled Riley saying he ran into the wall going after the ball and that he felt fine. The incident was deemed an accident. He did not remember if the administration ever considered Student A to be physically aggressive or a person who got into fights. Hensley never had any disciplinary issues or problems with Dayhoff as a teacher, and Dayhoff was not disciplined after this incident.

¶ 13    According to Student A's disciplinary record, he received 29 referrals from August 2016 to March 2017. Of those referrals, 24 were for insubordination, physical aggression, and fighting. The rest were for being in an unauthorized area, cutting class, profanity, and theft.

¶ 14 On February 16, 2018, plaintiff Kevin Haase filed a two-count complaint as Riley's parent and next friend. Count I alleged the District, through its employee Dayhoff, had a duty to refrain from willful and wanton conduct that could cause injury to a student in class and defendants breached that duty when Dayhoff did not supervise the class. Count II made a claim under the Family Expense Act, alleging Kevin became obligated for Riley's medical expenses following the injury.

¶ 15 On June 5, 2018, Kevin filed an amended complaint. Count I of the amended complaint alleged Dayhoff knew Student A had a history of violent behavior, Dayhoff should have supervised Student A more closely, and the District, through Dayhoff, and Dayhoff individually, exhibited an utter indifference to or conscious disregard for the students' safety. Count II remained the same.

¶ 16 On September 12, 2022, Kevin filed a second amended complaint, adding Riley as a named plaintiff because he had reached the age of majority.

¶ 17 Defendants moved for summary judgment, arguing section 2-201 of the Tort Immunity Act granted immunity to public entities and their employees for discretionary acts. Accordingly, they argued Dayhoff was entitled to immunity for his decisions on how to conduct and supervise his class, and the District was entitled to immunity for its determination and implementation of appropriate discipline and interventions for Student A. Defendants further argued plaintiffs could not provide evidence of defendants' willful and wanton conduct. Finally, defendants argued they were not liable for medical expenses because the Family Expense Act did not impose liability on a teacher or school district, and even if it did, recovery was contingent on finding an underlying liability.

¶ 18 The court granted defendants' motion. It found that Dayhoff's conduct in supervising his gym class—allowing "game day," allowing Student A to participate in the soccer game, and not

interceding in the soccer game—involved both the exercise of discretion and a determination of policy. The court found Hensley, Walz, and Lenfield exercised their discretion and made policy determinations in their assessment, evaluation, and plan for educating, disciplining, and managing Student A. They also exercised their discretion and made policy determinations in deciding what information to communicate to faculty and staff about Student A. The court found no set of facts would entitle plaintiffs to relief and overcome the immunity provided to defendants under sections 2-109 and 2-201 of the Tort Immunity Act. The court further found that, assuming section 3-108 of the Tort Immunity Act applied, defendants' conduct was not extreme and outrageous and did not shock the conscience. Lastly, the court found the Family Expense Act did not apply to this case because its purpose was to protect creditors, and defendants were not creditors. Plaintiffs appeal.

¶ 19                                               II. ANALYSIS

¶ 20        On appeal, plaintiffs argue the circuit court erred in granting summary judgment because (1) section 2-201 of the Tort Immunity Act does not provide immunity where there was no evidence Dayhoff made a conscious decision on whether to remove Student A from class, (2) section 3-108 pertains to supervision and Dayhoff's failure to supervise was willful and wanton when he failed to stop an ongoing danger, and (3) Riley's father is entitled to recover damages for medical expenses from defendants.

¶ 21        Summary judgment will be granted if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). "In reviewing a trial court's grant of summary judgment, we do not assess the credibility of the testimony presented but, rather, determine only whether the evidence presented was

6

sufficient to create an issue of material fact." *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 37. "In determining whether a genuine issue of material fact exists, the pleadings, depositions, admissions and affidavits must be construed strictly against the movant and liberally in favor of the opponent." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adames v. Sheahan*, 233 Ill. 2d 276, 296 (2009). "Summary judgment is a drastic means of disposing of litigation and, therefore, should be granted only when the right of the moving party is clear and free from doubt." *Id.* We review the circuit court's decision to grant a motion for summary judgment *de novo*. *Shaw v. U.S. Financial Life Insurance Co.*, 2022 IL App (1st) 211533, ¶ 26.

¶ 22                                                    A. Section 2-201

¶ 23            Section 2-201 of the Tort Immunity Act provides, "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2016). "The plain statutory language states that the act or omission giving rise to the injuries must constitute *both* an exercise of discretion *and* a determination of policy." (Emphases added.) *Andrews v. Metropolitan Water Reclamation District of Greater Chicago*, 2019 IL 124283, ¶ 37. "[D]iscretionary decisions are those unique to a particular public office, which involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed." (Internal quotation marks omitted.) *Wright-Young v. Chicago State University*, 2019 IL App (1st) 181073, ¶ 77. "[D]iscretion connotes a conscious

7

decision." *Monson v. City of Danville*, 2018 IL 122486, ¶ 33. Policy determinations require defendants "to balance competing interests and to make a judgment call as to what solution will best serve each of those interests[.]" *Wright-Young*, 2019 IL App (1st) 181073, ¶ 77.

¶ 24    The parties disagree over whether Dayhoff made a conscious decision. Plaintiffs argue Dayhoff was not paying attention to his class, so he could not have made any conscious decisions about something he was not aware of. But defendants argue Dayhoff made a number of decisions that day, including what sports the students would play in class, allowing students to participate even though they were not dressed in uniform, and from where he supervised the class.

¶ 25    There are conflicting accounts of what Dayhoff was doing during the gym class on the day in question. Riley and Jacob reported seeing him sitting at a desk, focused on his laptop. Dayhoff said he was supervising while walking around the gym. Riley reported that Student A was not playing soccer, but kept running in and out of the game. Jacob reported Student A was being obnoxious and unnecessarily rough during the game. Dayhoff observed Student A "playing soccer just like the rest of them." Dayhoff said if he saw Student A being physically aggressive, he would have removed him from the game because Student A was not dressed for class.

¶ 26    Defendants have to prove section 2-201 immunity applies. *Andrews*, 2019 IL 124283, ¶ 23. In *Andrews*, the defendant did not establish discretionary immunity under section 2-201 and, therefore, was not entitled to summary judgment. *Id.* ¶ 52. There, workers were using two ladders when the plaintiff fell on a coworker, causing severe injuries. *Id.* ¶ 6. The defendant admitted he was unaware of this two-ladder setup. *Id.* ¶ 35. There was no evidence that the defendant exercised judgment or skill in making decisions about ladders, or that he balanced competing interests and determined the solution to best serve those interests. *Id.* The supreme court stated, "In the absence of a judgment call and a weighing of risks and benefits, there is nothing to protect." *Id.* ¶ 41.

8

Similarly, it is not clear if Dayhoff made a conscious decision in allowing Student A to participate in class or if he was even aware of Student A's behavior during that class.

¶ 27　　Here, these disputed facts made summary judgment improper. The disputed facts call into question whether Dayhoff made a decision, let alone a discretionary decision. Dayhoff said he allowed Student A to participate and saw him playing soccer with the other students. Riley and Jacob said Student A was being disruptive and unnecessarily rough during the soccer game. But there is no evidence that Student A was ever removed from the game. It was defendants' burden to support their claim of section 2-201 immunity with evidence of conscious decision-making, and they failed to sustain that burden. See *Andrews*, 2019 IL 124283, ¶ 46. If Dayhoff did not know what was happening in his gym class, it also calls into question whether he made a policy determination. Because section 2-201 requires both a discretionary decision and a policy determination, and there are facts in dispute as to whether either or both occurred, the court should not have granted summary judgment.

¶ 28　　　　　　　　　　　　　　B. Section 3-108

¶ 29　　Plaintiffs argue that section 3-108 of the Tort Immunity Act applies, rather than section 2-201, and Dayhoff's failure to supervise was willful and wanton. "[W]here there exists a general statutory provision and a specific statutory provision, either in the same or in another act, both relating to the same subject, the specific provision controls and should be applied." *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). Section 3-108 specifically applies to supervision or the failure to supervise. Section 3-108 provides,

> "(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public

9

employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

(b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury." 745 ILCS 10/3-108 (West 2016).

"Supervision has been defined to include not only passive oversight of an activity but also direction, teaching, demonstration of techniques and—to some degree—active participation in an activity while supervising it." (Internal quotation marks omitted.) *Doe v. Dimovski*, 336 Ill. App. 3d 292, 298 (2003). But "[t]he quality or level of the teacher's supervision of the class is irrelevant to a section 3-108 analysis." *Hill v. Galesburg Community Unit School District 205*, 346 Ill. App. 3d 515, 521 (2004).

¶ 30        " 'Willful and wanton conduct' as used in [the Tort Immunity] Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2016). This definition applies in any immunity under the Tort Immunity Act where a willful and wanton exception is incorporated. *Id.* "Willful and wanton conduct differs from mere negligence in that it requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person]." (Internal quotation marks omitted.) *Doe v. Bridgeforth*, 2018

10

IL App (1st) 170182, ¶ 46. "Illinois courts define willful and wanton conduct, in part, as the failure to take reasonable precautions after knowledge of impending danger." *Id.* "Inadvertence, incompetence, or unskillfulness does not constitute willful and wanton conduct." *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 301 (2010). "Generally, whether a defendant's conduct is willful and wanton is a question for the jury." *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 27.

¶ 31    We do not reach a decision whether section 3-108 applies instead of section 2-201. We only find due to the disputed material facts, the court improperly granted summary judgment. Here, there are numerous facts in dispute regarding Student A and defendants' actions or inactions. In particular, Student A's reputation and level of aggression are disputed. Riley and Jacob both said they knew Student A was aggressive before this incident and he got into fights. But Walz and Lenfield said he was not aggressive or the initiator, but more so a target. The only communications about Student A that Walz sent to teachers were about his tendencies to wander, and Lenfield never received concerns from teachers that Student A exhibited aggressive behavior. However, Student A's disciplinary record for part of the 2016-2017 school year shows multiple referrals for insubordination and physical aggression. If Student A was in fact physically aggressive and a danger to other students, and that information was known to the District, the failure to disseminate such information to his teachers may be willful and wanton. Knowledge of Student A's aggression and the lack of precautions to protect other students may demonstrate indifference or conscious disregard for students' safety. Genuine issues of fact exist on the question of whether defendants' conduct was willful and wanton. Thus, summary judgment was improper.

¶ 32                                    C. Family Expense Act

11

¶ 33    The Family Expense Act "codifies the common-law rule making parents liable for the expenses of their minor children." *Manago By & Through Pritchett v. County of Cook*, 2017 IL 121078, ¶ 12. Its purpose is to protect creditors. *Baez v. Rosenberg*, 409 Ill. App. 3d 525, 531 (2011). "The common law in turn gives parents a cause of action against a tortfeasor who, by injuring their child, caused them to incur the medical expenses." *Bauer ex rel. Bauer v. Memorial Hospital*, 377 Ill. App. 3d 895, 922 (2007). Therefore, "because the [Family Expense Act] renders parents liable for the medical expenses of their minor children, parents can maintain a cause of action against a tortfeasor who injures their child for the recovery of resultant medical expenses." *Cullotta v. Cullotta*, 287 Ill. App. 3d 967, 975 (1997). But "[s]ince a parent's action under such circumstances is derivative, if a defendant is not liable in tort for the underlying injury to the child, the defendant cannot be held liable to the child's parent for the payment of medical expenses." *Id.*

¶ 34    Defendants argue the Family Expense Act does not impose liability on a teacher or a school district for medical expenses because it was designed to delineate when a creditor may maintain an action against one spouse. Although defendants are correct in citing the purpose of the Family Expense Act, their argument ignores the common law that gives parents a cause of action against a tortfeasor that injures their child. The circuit court erred in finding the Family Expense Act did not apply. Although defendants are not creditors, Kevin, who is responsible for Riley's medical expenses, is entitled to recover damages for medical expenses that may have resulted from defendants' actions. Because issues of material fact made summary judgment on count I improper, we also find summary judgment on count II, which was derivative of count I, improper.

¶ 35    Despite defendants' assertions that the facts are undisputed, we find there are material facts in dispute. Defendants' right to a judgment was not clear and free from doubt, and the court erred in granting summary judgment to defendants.

¶ 36                                    III. CONCLUSION

¶ 37        The judgment of the circuit court of Kankakee County is reversed and remanded.

¶ 38        Reversed and remanded.

¶ 39        JUSTICE HETTEL, dissenting:

¶ 40        I dissent from the majority's order in this case because I believe the conduct alleged in plaintiffs' complaint was not willful and wanton as a matter of law. As such, I would affirm the trial court's entry of summary judgment in favor of defendants on both counts of plaintiffs' complaint.

¶ 41        The majority states the general rule that "whether a defendant's conduct is willful and wanton is a question for the jury." *Supra* ¶ 31 (quoting *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 27). However, the majority fails to mention that if there is insufficient evidence to sustain an allegation of willful and wanton conduct, the issue should be decided as a matter of law. See *Barr v. Cunningham*, 2017 IL 120751, ¶ 15.

¶ 42        Courts in this state have repeatedly held that allegations against school staff for inadequate supervision are insufficient as a matter of law to establish willful and wanton conduct. See *id.* ¶ 18; *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 430-31 (1980); *Biancorosso v. Troy Community Consolidated School District No. 30C*, 2019 IL App (3d) 180613, ¶¶ 14-18; *Brooks v. McLean County School District Unit 5*, 2014 IL App (4th) 130503, ¶¶ 39-43; *Mitchell v. Special Education Joint Agreement School District No. 208*, 386 Ill. App. 3d 106, 111-12 (2008); *Stiff v. Eastern Illinois Area of Special Education*, 279 Ill. App. 3d 1076, 1082 (1996); *Pomaro v. Community Consolidated School District 21*, 278 Ill. App. 3d 266, 269-270 (1995); *Castaneda v. Community Unit School District No. 200*, 268 Ill. App. 3d 99, 104-06 (1994); *Poelker v. Warrensburg Latham Community Unit School District No. 11*, 251 Ill. App.

13

3d 270, 278 (1993); *Siegmann v. Buffington*, 237 Ill. App. 3d 832, 834 (1992); *Washington v. Chicago Board of Education*, 204 Ill. App. 3d 1091, 1095-97 (1990); *Jackson v. Chicago Board of Education*, 192 Ill. App. 3d 1093, 1100-01 (1989); *Templar v. Decatur Public School District No. 61*, 182 Ill. App. 3d 507, 512-13 (1989); *Holsapple v. Casey Community Unit School District C-1*, 157 Ill. App. 3d 391, 393-94 (1987); *Tijerina v. Evans*, 150 Ill. App. 3d 288, 292-93 (1986); *Weiss v. Collinsville Community Unit School District No. 10*, 119 Ill. App. 3d 68, 71-72 (1983); *Guyton v. Roundy*, 132 Ill. App. 3d 573, 578-79 (1985); *Booker v. Chicago Board of Education*, 75 Ill. App. 3d 381, 385-86 (1979); *Cipolla v. Bloom Township High School District No. 206*, 69 Ill. App. 3d 434, 437-38 (1979); *Montague v. School Board of Thornton Fractional Township North High School District 215*, 57 Ill. App. 3d 828, 831-32 (1978); *McCauley v. Chicago Board of Education*, 66 Ill. App. 3d 676, 677-79 (1978); *Clay v. Chicago Board of Education*, 22 Ill. App. 3d 437, 440-41 (1974); *Mancha v. Field Museum of Natural History*, 5 Ill. App. 3d 699, 702-03 (1972); *Gubbe v. Catholic Diocese of Rockford*, 122 Ill. App. 2d 71, 79 (1970); *Woodman v. Litchfield Community School District No. 12, Montgomery County*, 102 Ill. App. 2d 330, 334 (1968).

¶ 43        "Our courts have repeatedly held that a teacher's failure to supervise student activities during which a student was injured, does not in itself constitute wilful and wanton conduct." *Guyton*, 132 Ill. App. 3d at 579 (citing *Booker*, 75 Ill. App. 3d 381, *Clay*, 22 Ill. App. 3d 437, *Woodman*, 102 Ill. App. 2d 330, and *Mancha*, 5 Ill. App. 3d 699). Additionally, "Illinois courts have consistently held that a teacher's mere act of leaving children unsupervised will not be sufficient to establish willful and wanton misconduct." *Jackson*, 192 Ill. App. 3d at 1100 (citing *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331 (1981), *Cipolla*, 69 Ill. App. 3d 434, and *Mancha*, 5 Ill. App. 3d 699). To establish willful and wanton conduct based on

14

inadequate supervision in a school setting, the plaintiff must present evidence that the teacher "was aware or should have known that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm." *Jackson*, 192 Ill. App. 3d at 1100. A plaintiff's allegations that a teacher "should have known the harm would occur without adult supervision is insufficient to satisfy this standard." *Id.* (citing *Holsapple*, 157 Ill. App. 3d 391).

¶ 44    I agree with the majority that there are disputed facts in this case. However, I disagree that the disputed facts preclude entry of summary judgment in favor of defendants. While the disputed facts may raise an issue as to whether Dayhoff was guilty of negligence, they are insufficient to establish willful and wanton conduct. See *Brooks*, 2014 IL App (4th) 130503, ¶ 42; *Montague*, 57 Ill. App. 3d at 831.

¶ 45    The undisputed evidence established that Student A had been in Dayhoff's class for seven months at the time of the incident. Plaintiffs presented no evidence that Student A had previously harmed any other student in gym class at any time prior to this incident nor did they present evidence that Student A had threatened violence against Riley or any other student in the gym class on the day in question or at any other time. Even assuming that Student A had engaged in violence in school on other occasions and was playing soccer aggressively on the day in question, the evidence fails to establish that Dayhoff "was aware or should have known that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm" (*Jackson*, 192 Ill. App. 3d at 1100) to Riley on the day of the incident. See *Clay*, 22 Ill. App. 3d at 441 (plaintiff failed to allege facts sufficient to support claim for willful and wanton conduct by teacher where fellow student struck plaintiff in the face with a ruler without provocation while the teacher was absent from the classroom and the teacher knew or should have known that the student had been involved in similar incidents in the past); *Brooks*, 2014 IL App (4th) 130503, ¶¶ 40-42 (failure

15

to monitor students in bathroom where school officials were aware students were playing a game that involved "boys striking each other about the chest and abdomen" was insufficient to establish willful and wanton conduct); *Gubbe*, 122 Ill. App. 2d at 72, 79 (plaintiff who was beaten by another student during recess failed to show willful and wanton conduct by school officials for inadequate supervision even though plaintiff had previously asked school officials for protection against the student).

¶ 46        Based on the facts of this case, I would affirm the trial court's grant of summary judgment to defendants because plaintiffs' failure to present sufficient facts to support a finding of willful and wanton conduct renders defendants immune from liability under section 3-108 of the Act. See *Biancorosso*, 2019 IL App (3d) 180613, ¶ 18. Because defendants have immunity under section 3-108 of the Act, there is no need to address defendants' immunity under section 2-201 of the Act. See *Brooks*, 2014 IL App (4th) 130503, ¶ 43. Furthermore, plaintiffs' Family Expense Act claim also fails because defendants are not liable for plaintiff's injuries. See *Cullotta*, 287 Ill. App. 3d at 975.