NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250706-U

NO. 4-25-0706

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 31, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CHRISTINE STREET, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Woodford County |
| ZELLER DIGITAL INNOVATIONS, INC., an Illinois | ) | No. 23LA11 |
| Corporation, d/b/a ROOMREADY, | ) | |
|     Defendant-Appellee. | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, holding that the trial court properly granted
defendant's motion for summary judgment.

¶ 2     Plaintiff, Christine Street, filed a lawsuit against her former employer, defendant,

Zeller Digital Innovations, Inc., an Illinois corporation doing business as "RoomReady." Plaintiff

raised claims of breach of written contract, breach of oral contract, violation of the Illinois Wage

Payment and Collection Act (Wage Act) (820 ILCS 115/1 *et seq.* (West 2018)), and violation of

the Sales Representative Act (820 ILCS 120/0.01 *et seq.* (West 2018)). All of her claims sought

to recover commission payments she claimed defendant owed to her.

¶ 3     Defendant filed a motion for summary judgment, arguing that no issue of material

fact existed because plaintiff had been paid all commissions owed to her. Plaintiff filed a

"Motion for Summary Determination of [a] Major Issue Pursuant to 735 ILCS 5/2-1005(d),"

arguing that defendant's modification of its employee handbook two days before her termination with provisions concerning commission payments to terminated employees was unenforceable against her. The trial court granted defendant's motion for summary judgment and denied plaintiff's "Motion for Summary Determination of [a] Major Issue." Plaintiff appeals, arguing the court erred by granting defendant's motion for summary judgment and by denying her "Motion for Summary Determination of [a] Major Issue." We affirm.

¶ 4                                     I. BACKGROUND

¶ 5             The undisputed evidence in this case showed that plaintiff worked for defendant, a company that sold and installed commercial audio-visual equipment and software, in various roles from 2012 until August 29, 2018, at which time defendant terminated her employment. In 2018, plaintiff worked in a sales role as an account executive, and she was paid commissions for her work. In early 2018, defendant distributed a "Playbook" to account executives, which set forth defendant's commission compensation plan. The Playbook stated, in relevant part:

> "In order to further reward a focus on Revenue and Gross Profit goals we are moving to a compensation plan based on 100% commission up [to] 25% (starting at 17% with an additional available 8% based on [Key Performance Indicators (KPIs)]) of each Account Executive[']s actual Gross Profit. A draw option will be extended to each Account Executive based on their last year's earnings.
>
> Each Account Executive will be able to choose a weekly draw adding up to 70% of FY 2017 actual year end earnings. *** Commission will pay back the draw account before being delivered to Account Executives.
>
> At the end of each month, all jobs that have been paid in full will payout

- 2 -

17% of the actual [Gross Profit] to Account Executives draw account. Anything above account balance will be paid out to Account Executives.

[KPIs] will be part of compensation package and will be paid out at the end of each quarter when KPI criteria are met."

¶ 6 On August 27, 2018, an updated version of the Playbook (August Playbook) was issued to employees, including plaintiff, via e-mail. The August Playbook contained a section titled "**Termination" that was not included in the original Playbook. This section stated:

"When an Account Executive's employment is terminated (either by the Account Executive him or herself, or by RoomReady), they will be paid out on the same monthly/quarterly schedule as when employed. The Account Executive will no longer receive a weekly draw, but at the end of the month their spreadsheet will be updated. They will be paid according their closed-out jobs of which RoomReady has accepted final payment from the customer. The commission will first go to payback any existing negative balance associated with the Account Executive's draw before funds are released to the account executive.

An opportunity with a [purchase order or purchase order] equivalent *** will be considered closed/won and any [gross profit] associated will be credited to the Account Executive. If an Account Executive has not received a [purchase order or purchase order] equivalent before her or his last day the [gross profit] associated will not be credited to them, but instead it will be credited to the Account Executive that took it over."

¶ 7 On June 30, 2023, plaintiff filed a complaint against defendant, which she subsequently amended. On October 23, 2023, plaintiff filed her first amended complaint, which

contained claims for (1) breach of written contract, (2) breach of oral contract, (3) violation of the Wage Act, and (4) violation of the Sales Representative Act. Plaintiff subsequently withdrew her claim under the Sales Representative Act.

¶ 8    The first amended complaint stated that the original Playbook did not restrict the payment of commissions to terminated workers. The complaint alleged: "On or about August 27, 2018, without prior knowledge or consent of Plaintiff, Defendant *** delivered an email to Plaintiff that the 2018 'Playbook' was being unilaterally revised." The complaint alleged that plaintiff was "on the cusp of solidifying and having executed a Purchase Order *** for several large customer accounts" prior to her termination and the "unilateral revision" of the Playbook was "predetermined and intentionally made to deprive [her] of earned commission sales on gross profit she was solely responsible for soliciting for Defendant."

¶ 9    In the first two counts of her first amended complaint (breach of written contract and breach of oral contract), plaintiff alleged that a written contract and an oral contract existed between her and defendant; defendant altered the provisions of these contracts by changing the structure of the Playbook without discussion, consent, notice, or negotiation of its terms; and "[t]he change in terms resulted in a breach when Defendant terminated Plaintiff without paying outstanding commissions on several large projects Plaintiff had spent months bringing to fruition." Similarly, in the third count of the complaint, plaintiff alleged defendant violated the Wage Act by withholding commissions owed to plaintiff.

¶ 10    On September 3, 2024, the trial court entered an order setting a discovery deadline of December 31, 2024, and a deadline for dispositive motions of March 1, 2025.

¶ 11    On December 31, 2024, plaintiff filed a motion to extend the discovery deadline, stating that plaintiff's counsel had undertaken a "larger caseload than expected" due to an

- 4 -

unanticipated loss of staff and had "fallen behind" with written discovery disclosures, responding to written discovery requests, and depositions. Plaintiff requested that the discovery deadline be extended for written discovery requests and "one or two depositions of Defendant's principal officers or agents." Defendant filed a response opposing an extension. On February 25, 2025, the trial court denied the motion. Plaintiff does not challenge this ruling on appeal.

¶ 12                                 A. Summary Judgment

¶ 13                        1. *Defendant's Motion for Summary Judgment*

¶ 14          On February 27, 2025, defendant filed a motion for summary judgment on the basis that all of plaintiff's claims failed because she was paid in full for all earned commissions. In the motion, defendant asserted that all of plaintiff's claims were "predicated upon the terms of the contract between [plaintiff and defendant]." Defendant further asserted that the August Playbook, which it characterized as a contract between plaintiff and defendant, "expressly provided when a project is closed/won and how employees are paid following termination of employment." Defendant asserted: "It is incontrovertible that [plaintiff] was paid all of the commissions that were due to her for the projects that were closed/won during her employment with [defendant]." Attached as exhibits to the motion for summary judgment were the affidavits of Aaron McArdle and Sarah Nix, as well as excerpts from plaintiff's discovery deposition.

¶ 15                                 a. McArdle's Affidavit

¶ 16          In his affidavit, McArdle averred that he was the sole shareholder and member of the board of directors of Zeller Digital Innovations, Inc., as well as the company's chief executive officer, secretary, and treasurer. He stated he was previously the president of RoomReady from January 2009 to January 2022, and, accordingly, he was familiar with RoomReady's sales employees, the commission structure for sales, and client projects during the

time he was president. McArdle stated that, beginning in 2018, a "draw-based commission plan" was implemented, which was specified in the Playbook.

¶ 17 McArdle asserted that, at the time the Playbook was issued, a salesperson was "deemed to have closed/won a client project only after receiving a purchase order or purchase order equivalent approving the project" and was entitled after termination of employment "to receive commission for projects that were closed/won *** at the time of termination and then later paid by the client after termination." McArdle stated that these "established practice[s]" were not specified in the Playbook but remained in effect when it was issued. McArdle stated that, in order to provide clarity to employees regarding the established practices of the company, the Playbook was amended in August 2018.

¶ 18 B. Nix's Affidavit

¶ 19 In her affidavit, Nix stated that she was employed by defendant as the director of human resources and she was responsible for maintaining all personnel files (including plaintiff's), as well as files on RoomReady's client projects, which she reviewed prior to preparing her affidavit. Nix averred that: "At the time of and following [plaintiff's] termination on August 29, 2018, the client projects that [plaintiff] had closed/won were tracked on a spreadsheet identifying, among other items, the date on which the client project was closed/won." A copy of this spreadsheet was attached to Nix's affidavit. Nix further stated: "Following her termination, in accordance with [the August Playbook, plaintiff] was paid in full on commissions for all profitable client projects closed/won by [plaintiff] prior to her termination that were paid by the clients after her termination." A ledger card report was attached to Nix's affidavit, which reflected payments made by defendant to plaintiff between January 1, 2017, and June 14, 2019.

¶ 20                                    c. Plaintiff's Discovery Deposition

¶ 21          Excerpts from plaintiff's discovery deposition testimony were also attached to the motion for summary judgment. In these excerpts, plaintiff stated that, in her experience, commissions were paid to her once defendant received payment from the client, as stated in the Playbook. Plaintiff also stated that she received some commission payments from defendant after her employment was terminated. She stated these payments were for projects she "had already closed and got [a purchase order] on previous to [her] termination" but that had not been completed and paid for by the client at the time she was terminated. She received these payments once the client had paid defendant.

¶ 22                                    2. *Plaintiff's Response*

¶ 23          On March 31, 2025, plaintiff filed a response to defendant's motion for summary judgment in which she argued that defendant was not entitled to summary judgment on her three claims, as several disputed material facts remained. Specifically, she asserted that defendant did not have an established past practice of requiring a purchase order or equivalent before commission payments were made; terminated account executives were paid commissions on projects that did not have purchase orders or equivalents; and plaintiff was not paid for all profitable projects she closed or won. In support of her claim that she had not been paid on all profitable projects she won, plaintiff attached her own affidavit, in which she stated: "I was not paid commissions for projects that did not have signed Purchase Orders as of the date I was terminated on August 29, 2018."

¶ 24          Plaintiff asserted that the changes to the original Playbook set forth in the August Playbook, including the provisions concerning compensation for terminated employees, were "unenforceable against [her]" because they lacked consideration. Plaintiff argued that she was

instead entitled to payment of commissions under the original Playbook, which she claimed entitled her to "commissions for projects she solicited, procured, acquired or otherwise garnered for [defendant], including projects that did not receive or have fully executed Purchase Orders before she was terminated."

¶ 25                              3. *Defendant's Reply*

¶ 26        On April 14, 2025, defendant filed a reply to plaintiff's response to the motion for summary judgment. In its reply, defendant asserted that (1) the August Playbook was a codification of an established past practice that required no additional consideration; (2) even under the original Playbook, plaintiff was paid commissions for all jobs that were paid in full by the client at the time of her termination; and (3) plaintiff's claims were supported only with speculation and did not create a disputed issue of material fact.

¶ 27        Defendant asserted that plaintiff offered no evidence that any projects other than the ones for which she was already paid were actually closed by her, profitable, and later paid in full. Defendant cited portions of plaintiff's discovery deposition in which she admitted that it was possible the jobs for which she was claiming commissions did not happen or, if they happened, did not result in any profit. Defendant asserted plaintiff "adduced absolutely no proof that any of the projects for which she now seeks a commission were ever closed/won, paid for in full by a RoomReady client, or profitable."

¶ 28        B. Plaintiff's Motion for Summary Determination of a Major Issue

¶ 29        On March 5, 2025, plaintiff filed a motion for summary determination of a major issue pursuant to section 2-1005(d) of the Code of Civil Procedure (735 ILCS 5/2-1005(d) (West 2024)). Plaintiff's motion requested that the trial court find that defendant's "eleventh hour unilateral modification to its 2018 handbook on August 27, 2018[,] is unenforceable for lack of

consideration because it disadvantaged [plaintiff] without providing her a benefit." Plaintiff argued that defendant was contractually bound to honor the terms of the Playbook in its original form.

¶ 30        Plaintiff included a full transcript of her discovery deposition as an exhibit to her motion for summary determination of a major issue. During her deposition, plaintiff identified an exhibit prepared by her attorney containing a list of projects for which she claimed she was still owed commissions. The list contained the amounts plaintiff had quoted to customers before her employment was terminated and the amount of profit she estimated the projects would have generated based on these quotes. When asked if purchase orders were ever signed as to any of the projects, plaintiff said she did not have access to that information. Plaintiff stated it was possible that the projects listed on the exhibit were not profitable. She also stated it was possible that, for a project identified in the exhibit, defendant never ultimately received a purchase order from the client and that the project never materialized. However, she later identified several specific projects that did not have purchase orders at the time of her termination that she had been told were completed after she was terminated.

¶ 31                        C. Ruling on Dispositive Motions

¶ 32        On June 9, 2025, the trial court entered a written order stating that, "[f]or the reasons stated on the record," it was granting defendant's motion for summary judgment and denying plaintiff's motion for summary determination of a major issue. (No transcript of the arguments on the parties' dispositive motions or the court's oral pronouncement of its ruling appear in the record on appeal.) This appeal followed.

¶ 33                        II. ANALYSIS

¶ 34   On appeal, plaintiff argues that the trial court erred by granting defendant's motion for summary judgment and by denying her motion for summary determination of a major issue. We first address plaintiff's argument that the court erred by granting defendant's motion for summary judgment, as we find it dispositive.

¶ 35   Plaintiff argues that the trial court erred by granting defendant's motion for summary judgment when it ruled that no genuine issues of material fact existed as to her claims of breach of written contract, breach of oral contract, and violation of the Wage Act. She contends she was not paid all of the commissions to which she was entitled, as she was not paid for commissions on projects she solicited or procured that did not have fully executed purchase orders as of the date of her termination. She argues that the provisions in the August Playbook concerning commission payments to terminated employees were unenforceable against her because they lacked consideration and the original Playbook contained no language concerning postemployment limitations on commissions. She also argues that defendant did not have a past practice of refusing payment to terminated account executives for projects without purchase orders, as it claimed in its motion for summary judgment.

¶ 36   Defendant argues, *inter alia*, that the trial court properly granted summary judgment because the undisputed facts demonstrate that plaintiff's commission claims are supported with only speculation as to the additional jobs on which she believes she earned commissions and, accordingly, she cannot establish any damages. Defendant argues that plaintiff failed to produce any evidence that she is owed additional commissions under the original Playbook or otherwise, other than unsupported assertions and conclusory statements. Defendant notes that plaintiff claimed in her discovery deposition that she was entitled to commissions for projects listed on an exhibit her attorney had prepared. However, she also stated during the

deposition that she calculated these commissions based on what she estimated the profit on the projects would be rather than the actual profit, and she admitted it was possible the jobs did not result in any profit or possibly never even materialized in the first place.

¶ 37 Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). "A genuine issue of material fact exists where the material facts are disputed or reasonable people could draw different inferences from the undisputed material facts." *Haase v. Kankakee School District 111*, 2025 IL 131420, ¶ 29. "Disposing of litigation on a motion for summary judgment is a drastic measure; as such, a motion should only be granted if the movant's right to judgment is clear and free from doubt." (Internal quotation marks omitted.) *Id.* We review a trial court's ruling on a motion for summary judgment *de novo*. *Id.*

¶ 38 "On a motion for summary judgment it is the movant who bears the burden of persuasion and the initial burden of production." *Hall v. Flowers*, 343 Ill. App. 3d 462, 469 (2003). "A defendant *** may meet the initial burden of production either: (1) by affirmatively showing that some element of the cause of action must be resolved in defendant's favor; or (2) by demonstrating that plaintiff cannot produce evidence necessary to support the plaintiff's cause of action." *Id.* at 469-70. If the defendant satisfies the initial burden of production, the burden shifts to the plaintiff to present some factual basis that would arguably entitle him or her to a favorable judgment. *Id.* at 470.

¶ 39 While a plaintiff is not required to prove his or her case at the summary judgment stage, "the nonmoving party must present a factual basis that would arguably entitle the party to a judgment" in order to survive a summary judgment motion. *Robidoux v. Oliphant*, 201 Ill. 2d

324, 335 (2002). "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is the proper result." *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669, ¶ 44. "[U]nsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact." *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20.

¶ 40    Here, plaintiff has alleged claims for breach of written contract, breach of oral contract, and violation of the Wage Act based on defendant's alleged failure to pay her for all commissions due to her under the original Playbook. "To succeed on a breach of contract claim, a plaintiff must plead and prove (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. To recover under the Wage Act, plaintiff was required to show (1) defendant was an "employer" as defined in the Wage Act, (2) plaintiff was an "employee" as defined by the Wage Act, (3) the parties entered into an "employment contract or agreement," (4) she was due "final compensation" pursuant to this contract or agreement, and (5) defendant failed to timely pay her all the final compensation she was due. 820 ILCS 115/2, 14(a) (West 2024); see *Catania v. Local 4250/5050*, 359 Ill. App. 3d 718, 724 (2005).

¶ 41    Thus, plaintiff's claims for both breach of contract and violation of the Wage Act required a showing that defendant failed to pay her commissions that were due to her under an employment contract. In its motion for summary judgment, defendant asserted that plaintiff had received all the commissions due to her for projects that she closed or won during her employment because, pursuant to the August Playbook, she had been paid commissions for all projects for which a purchase order had been received at the time of her termination. The motion

was supported by Nix's affidavit, in which Nix averred that plaintiff was paid commissions for all projects she closed or won prior to her termination that were paid by clients after her termination. A spreadsheet purportedly listing all of plaintiff's closed projects and the commissions she earned on each project and a ledger sheet reflecting the payments defendant made to plaintiff were attached to Nix's affidavit as exhibits.

¶ 42       In her response, plaintiff did not dispute that she had received these payments. Rather, she argued that, under the terms of the original Playbook, she was entitled to additional commissions for projects she had procured but that did not yet have purchase orders at the time of her termination, and the portion of the August Playbook concerning compensation for terminated employees did not apply to her because it lacked consideration. However, the only evidence she offered in dispute of defendant's claim that she had been paid all of the commissions due to her for profitable projects she closed or won during her employment was the following statement in her own affidavit: "I was not paid commissions for projects that did not have signed Purchase Orders as of the date I was terminated on August 29, 2018."

¶ 43       Even if we were to accept plaintiff's argument that the August Playbook was unenforceable against her and that she was entitled under the original Playbook to commissions for projects she procured but did not have fully executed purchase orders on the date of her termination, she failed to provide a sufficient evidentiary basis in support of her claim that she was actually owed additional commissions. Under the terms of the original Playbook, plaintiff was only entitled to receive commissions on projects that were profitable and paid for in full by the client. However, plaintiff failed to include any evidence in her response to defendant's summary judgment motion specifically identifying projects she procured during her employment which did not have signed purchase orders at the time of her termination but (1) for which

purchase orders were subsequently received, (2) which were ultimately paid for in full by the client, and (3) which were profitable. See *Tafoya-Cruz v. Temperance Beer Co.*, 2020 IL App (1st) 190606, ¶ 68 ("[T]he party opposing summary judgment ordinarily must produce actual evidentiary facts that would enable a jury to return a favorable verdict—and mere speculation, conjecture, or guess is insufficient." (Internal quotation marks omitted.)).

¶ 44      Plaintiff's general statement in her affidavit that she was not paid commissions for projects that did not have signed purchase orders when she was terminated was insufficient to raise a genuine issue of a material fact as to whether additional commissions were owed to her. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 132 (1992) ("Statements in an affidavit which are based on information and belief or which are unsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact."). While plaintiff identified in her discovery deposition several projects she claimed she procured but did not yet have fully executed purchase orders for at the time of her termination and indicated she was later told were completed, she failed to present any evidence that these projects were profitable. Without evidence of a project's profitability, plaintiff could not establish her entitlement to damages, an element common to all of her claims against defendant.

¶ 45      Accordingly, we conclude the trial court properly granted defendant's motion for summary judgment. As such, we need not address plaintiff's claim that the court erred by denying her motion for summary determination of a major issue.

¶ 46                           III. CONCLUSION

¶ 47      For the reasons stated, we affirm the trial court's judgment.

¶ 48      Affirmed.

- 14 -